(281 P.3d 559)
No. 106,707

In the Matter of the Marriage of MATTHEW M. MERRILL, *Appellant*, and NANCY A. JADLOW, f/k/a NANCY A. MERRILL, *Appellee*.

944

Opinion filed July 6, 2012.

*Stephen S. Brown* and *Diane H. Lewis*, of Brown & Ruprecht, PC, of Kansas City, Missouri, for appellant.

*Emily A. Hartz* and *Aaron R. Bailey*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe, L.L.C., of Lawrence, for appellee.

Before MARQUARDT, P.J., HILL, J., and LARSON, S.J.

MARQUARDT, J.: Matthew M. Merrill appeals the district court's refusal to remove Patrick Nichols as the case manager and its assessment of Nichols' fees and costs against Merrill. We affirm in part, reverse in part, vacate in part, and remand with directions.

Matthew and Nancy Merrill filed cross-petitions for divorce in mid-2004. The district court granted the divorce on October 12, 2004, but retained jurisdiction over child custody, child support, and division of marital property. Throughout these proceedings, Nancy Merrill is referred to as Nancy Jadlow because she had remarried.

On April 21, 2005, the district court ordered the parties to participate in mediation with Larry Rute of Associates in Dispute Resolution (ADR) for unresolved issues. Following a hearing on August 3, 2005, the district court entered two separate journal entries, one concerning a parenting plan, child custody, and child support and the other resolving shared child expenses, division of property, and debt allocation.

On July 15, 2010, the district court ordered the parties to participate in case management with Patrick Nichols, as provided for in K.S.A. 23-1001 *et seq.* Nichols is a business partner of Larry Rute's at ADR.

K.S.A. 23-1002(a) states: "The court may order case management, when appropriate, of any contested issue of child custody or parenting time at any time, upon the motion of a party or on the court's own motion." The statute enumerates when case management is appropriate. Even though the parties had only sought child custody modification on one occasion since the divorce 6 years earlier, the court ordered case management because of the parties' "lack of constructive communication." Lack of constructive communication is not one of the statutorily enumerated reasons for ordering case management.

When case management is ordered, a neutral case manager is appointed "to assist the parties in negotiating a plan for child custody, residency, or visitation or parenting time." The court's order required the parties to participate and cooperate with Nichols in resolving any parenting, custody, or financial issues related to the children.

On July 27, 2010, Nichols sent a letter to Merrill and Jadlow outlining, among other things, his expectation on the payment of fees. When Jadlow failed to pay Nichols' $5,000 retainer, on September 1, 2010, Nichols wrote a letter to the court stating:

"Unfortunately, it appears the case management will not be an effective conflict resolution technique in this matter for the reasons outlined below.
. . . .
"Nancy Jadlow, and more recently her husband Todd Jadlow, have communicated in no uncertain terms to the Case Manager that they simply cannot afford this process. . . .
"Nancy Jadlow has stated repeatedly that she simply cannot afford case management. She protests that she had incurred huge legal bills and other expenses which simply make it not feasible for her to pay. High conflict is extremely expensive. Since she cannot pay the retainer, it is unlikely she will pay ongoing case management expenses. As such, case management is likely to simply become another flashpoint in the conflict between parties.
"Case management is intended to serve a rehabilitative function, guiding the parties into a better process by which they can raise their children. Since Nancy Jadlow cannot afford this process, and certainly if she cannot pay her retainer, it is unlikely that she will pay ongoing expenses. Therefore, case management is not appropriate.
"I recommend the Court confirm the status quo as set forth in your Order, eliminate the contingencies that will occur if, as and when Mrs. Jadlow and her

husband reestablish a permanent residence in Lawrence, Kansas. I recommend this for several reasons.

"1. It is important that there be a decision-maker. The parties have virtually no capacity to communicate in any way without escalating the conflict. As such, there is no cooperation between them. Absent case management, there is no likelihood that they will learn to cooperate. As such, one or the other must have the ability to make decisions about parenting time and parenting access.

"2. The problems in communication and decision-making are detailed in the report and your opinion. For the reasons set forth in your opinion, as between the two, Mr. Merrill is the more appropriate individual to receive decision-making authority in this case.

"3. If further difficulties arise between the parties, I would recommend that the Court grant sole custody to one of the parents. Based on the statements above, as between these two parents, it would appear that Mr. Merrill is the more appropriate parent to receive full custody. Full custody will allow one parent to make the essential decisions regarding the children. While this is a disfavored custody arrangement, it does provide an opportunity to protect the children from further conflict around day-to-day decisions.

"I appreciate the appointment. However, in this matter it does not appear that case management services are appropriate."

Jadlow responded with a letter to the court on September 3, 2010, stating that Nichols had told her and her husband that he initially

"was not interested in being the Case Manager in this case but that *he had agreed to the appointment as a favor to Judge Shepherd.* As such, it is concerning that Mr. Nichols initially had a lack of interest in providing services in this case and then provided a harsh recommendation to the Court based on a financial issue rather than on legitimate grounds in determining child custody." (Emphasis added.)

Jadlow testified that Judge Shepherd's administrative assistant contacted her, informing her that she would be permitted additional time to pay the retainer.

Nichols continued as the case manager and, in November 2010, he filed his first case manager's report, recommending a shared parenting plan. In that report, Nichols noted that "both parties are strong-willed, intelligent and capable of litigious conduct."

On February 3, 2011, Merrill wrote a letter to Jadlow stating that he intended to move to Kansas City and offering options for primary residential custody of the children. In pertinent part, the letter read:

"As for future school-years, it is my opinion that it would be in the children's best interest for me to have primary residential custody during their remaining school years. If you agree, then I will agree to enroll them at The Pembroke Hill School, oversee their education there throughout high school and pay for their tuition. As you may be aware, Pembroke Hill is a nationally-renowned college preparatory school. Here's the website: http://www.pembrokehill.org. Please take a look at the school's website, imagine the life that the girls could lead with me devoting 100% of my attention to them in a stable environment while they attend this premier school, and seriously consider this option. My entire family is now in the Kansas City area and would provide a support network. I would agree to drive the girls to you on your weekends after school on Friday and then pick them up from your house on Sunday evenings at 8:00 p.m. so that you would not need to drive into Kansas City. I implore you to choose this option. I ask for your agreement on this.

"If you don't agree, then the alternative is for the girls to stay here in Lawrence with [A.S.M.] to attend Southwest and then Free State, and [A.M.M.] to finish Quail Run, attend West and then Free State. All the while having your attention divided among seven daughters and step-daughters in a chaotic environment that includes constant fighting between you and your husband, you and your parents and sister, your family and your husband, your husband and his ex-wife and her husband, and the girls with one-another."

Merrill sent a copy of the letter to Nichols to inform him of his custody proposal and to provide Nichols with his new address. Nichols promptly sent a letter to Merrill and Jadlow, asking them to participate in a case management meeting within 2 weeks. Merrill sent an e-mail message to Nichols essentially stating that Nichols' assistance was not required because there was no custody dispute.

Nichols responded with an e-mail message to Merrill which stated, "Matt, did you really send this to me? Really?" Merrill sent another letter to Nichols explaining that there was no dispute between himself and Jadlow concerning custody and, therefore, they did not need Nichols' assistance. Merrill also claimed that Nichols' case management was unprofessional and requested his resignation as the case manager.

Nichols prepared a proposed case management report with custody recommendations and sent it to the parties, ostensibly for their review and comment. Merrill then sent an e-mail message to Nichols suggesting a few changes. Merrill suggested that Nichols delete his suggestion that Merrill pay 75% of Nichols' fees, which

at that point totaled $1,312.51. Nichols responded to this e-mail message indicating no reservations about most of Merrill's suggestions, except Merrill's request that he delete the request for this payment. Nichols' response stated:

"I decline your proposal here. My offer to you was to allow you to avoid presenting the issue to the court. If you do not agree that is your right. You have the right to seek to remove me, I have the right to be paid for those efforts which you chose to begin but not pursue. The offer was a courtesy to you since to explain the cost and reasons for the reccomendation [sic] I will need to include your letters, emails, motions etc along with my responses which some would conclude reflect negatively on you. If you change your mind about having that aired in court let me know. The report will be filed by Monday."

Nichols filed this report with the court on March 10, 2011, which recommended that the parties have joint custody of their children, with Jadlow as the primary residential parent. The report contained most of the changes that Merrill had suggested but included the request that Merrill be ordered to pay the $1,312.51.

On March 14, 2011, Merrill wrote a letter to the court objecting to the payment of Nichols' fee, and he also filed a motion to reassign the case manager. Nichols responded by filing another case manager's report on March 16, 2011, with six attachments and asked for an additional payment of $2,650 from Merrill. Merrill objected and moved to strike Nichols' reports of March 10, 2011, and March 16, 2011. Nichols sent a letter to Merrill on March 18, 2011, stating: "I am concerned that you don't understand the nature of the Case Management process."

On April 8, 2011, Nichols wrote a letter to the court and attached a motion asking the court to allow him to withdraw as case manager. On May 23, 2011, Judge Huff held a hearing on Merrill's motion to reassign the case manager and Nichols' motion to withdraw. During the hearing, the court stated that the case manager's "position is important to me and he does have standing in the case manager decision in family law. . . . [T]his is how case manager works in Douglas County." In replying to the court's suggestion that Nichols withdraw his motion, Nichols replied that he "was in the process of reconsidering the motion to withdraw." Nichols went on to say:

"I think the Court's first question is should there be case management here. Second question is should I be the case manager. . . . And so if there's someone else the Court can see that could do this job, boy, I'd be more than happy to go home, but *I don't know of anyone who could do this.* As you can see at one point I wasn't sure I could do it, so I'd like to just let that sit if you don't mind. If you need me to formally withdraw it, I will." (Emphasis added.)

At the conclusion of the hearing, Judge Huff took the motions under advisement and on August 5, 2011, issued a memorandum decision ordering Nichols to continue as case manager and assessing $7,575 against Merrill for Nichols' fees. Merrill filed a timely notice of appeal. Nichols is not a party to this appeal.

### CASE MANAGER'S MOTION TO WITHDRAW

On appeal, Merrill's first claim is that the district court erred in refusing to grant Nichols' unopposed motion to withdraw as case manager. Merrill contends that K.S.A. 23-1003(b) gives a case manager an absolute right to withdraw from a case. Jadlow claims that Nichols either withdrew or abandoned his motion; therefore, the withdrawal issue is not properly before the appellate court. In his reply brief, Merrill contends that Nichols' motion was never withdrawn and that the district court ruled on the motion, ordering Nichols to continue as case manager.

During the motion hearing on May 23, 2011, the court stated, "Okay. The next motion is a motion for withdrawal by you Mr. Nichols, which I'm hoping that you will withdraw at this point." Nichols' responded, "I would prefer to defer it until we conclude. I am not asking to withdraw at this time. . . . If you need me to formally withdraw it, I will." The court then stated, "It can sit for now." The court's August 2011 decision stated: "The court has requested that Mr. Nichols remain on the case. Mr. Nichols has expressed a willingness to do so, and the Court hereby orders that he continue serving as case manager." Nichols, in essence, withdrew his motion by agreeing to continue as the case manager. However, the court also effectively overruled his motion by ordering Nichols to continue to serve.

Under K.S.A. 23-1003(b), a case manager "may withdraw at any time following the initial order." The statute has a nonexclusive list

of "sufficient reasons" for a case manager to withdraw. Among the reasons listed are nonpayment by a party, lack of cooperation by a party, or "any other reason which shall be stated to the court in writing and considered adequate and sufficient reason by the court." K.S.A. 23-1003(b).

The trial court made no findings of fact concerning Nichols' reasons for requesting he be allowed to withdraw. An appellate court reviews the district court's findings of fact to determine if the findings are supported by substantial competent evidence and are sufficient to support its conclusions of law. See *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009). Here, the court made no findings of fact, it only made a statement that it wanted the case manager to continue.

In general, a litigant must object to inadequate findings of fact before the trial court to preserve the issue for appeal. *Dragon v. Vanguard Industries*, 282 Kan. 349, 356, 144 P.3d 1279 (2006). When no party objects before the trial court, this court presumes that the trial court found the facts necessary to support its judgment. *Gilkey v. State*, 31 Kan. App. 2d 77, 77-78, 60 P.3d 351, *rev. denied* 275 Kan. 963 (2003). Neither party objected to the lack of findings of fact; therefore, we affirm the district court's ruling on the unopposed motion to withdraw.

## MOTION TO REASSIGN THE CASE MANAGER

Merrill claims the district court abused its discretion in denying his motion of March 14, 2011, to reassign the case manager. When a motion is filed to reassign a case manager, the district court is required to review the request. See K.S.A. 23-1003(c). The decision to grant or deny such a motion is clearly committed to the discretion of the district court. *In re Marriage of Gordon-Hanks*, 27 Kan. App. 2d 987, 991, 10 P.3d 42, *rev. denied* 270 Kan. 898 (2000).

The party seeking removal of a case manager has the burden of proving that removal is necessary. See *In re Marriage of Gordon-Hanks*, 27 Kan. App. 2d at 994-95. In support of his motion, Merrill cites the following as evidence of Nichols' bias and loss of neutrality: (1) Nichols' threat to recommend sole custody of the chil-

dren to Merrill unless Jadlow paid the $5,000 retainer; (2) Nichols' acrimonious comments and threats to grant sole custody of the children to Jadlow in his November 30, 2010, case management report; (3) Nichols' unwarranted interference in February to Merrill's suggested options for a change in custody and Nichols' unprofessional responses to him; (4) Nichols' use of derogatory language in his motion to withdraw and during the subsequent hearing; (5) Nichols' threat to inform the court of Merrill's conduct as litigious because of Merrill's refusal to pay Nichols $737.50 for time spent responding to Merrill's objections to two of the case manager's reports; and (6) Nichols' claim of $7,575 in fees for responding to Merrill's attempts to remove Nichols as the case manager.

The district court's memorandum decision does not address each of Merrill's allegations of Nichols' bias and loss of neutrality. It concluded only that

"evidence adduced at the hearing failed to show actual bias or a probability of bias. The case manager has often supported Mr. Merrill's position; indeed, this is the first major disagreement. Notwithstanding Mr. Merrill's claims of bias and the regrettable invective inflaming this case, the objective facts do not support any claim of actual or perceived bias."

The district court's decision constitutes a negative finding. When a district court finds a party has not carried his or her burden of proof, an appellate court reviews the record for evidence that the court arbitrarily disregarded undisputed evidence and abused its discretion or that the court's finding was motivated by bias, passion, prejudice, or some other extrinsic consideration. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 781, 189 P.3d 508 (2008). Merrill suggests that the district court's characterization of the evidence at the hearing ignored clear evidence of Nichols' bias, and the court abused its discretion in overruling his motion to reassign the case manager. An abuse of discretion occurs when the court's action is arbitrary, fanciful, or unreasonable. Abuse of discretion means that no reasonable person would have made the decision that was made. *Unruh v. Purina Mills*, 289 Kan. 1185, 1202, 221 P.3d 1130 (2009).

### 1. $5,000 Retainer

Merrill claims that Nichols initially demonstrated a lack of neutrality and objectivity by recommending that the court award sole custody to Merrill if Jadlow failed to pay Nichols' $5,000 retainer. Jadlow responded to Nichols' letter, stating:

"On August 31st, both Todd [Jadlow] and I informed Mr. Nichols that we will have the $5,000 retainer paid by September 20th. Specifically, Todd and I indicated that we will provide him with two post dated checks (one post dated to September 5th in the amount of $2,500.00 and a second check post dated to September 20th in the amount of $2,500.00). Unfortunately, Mr. Nichols was unwilling to accept this arrangement and then submitted his letter to the Court indicating that case management was not appropriate.

. . . .

"While I understand the fact that Mr. Nichols expects and rightfully so needs to be paid for his services, I have learned that other case managers do not require a $5,000.00 initial retainer. In fact, there is a large disparity in what Mr. Nichols is requesting per party versus what other case managers, including his own office partner (Mr. Larry Rute), request per party for the initial retainer. Specifically, the following five quotes have been provided as initial retainer fees for case management: (1) Bill Ebert $450.00 per party; (2) Katherine Kirk $500 to $1,000.00 per party; (3) Nancy Caviar $1,000.00 per party; (4) Wes Crenshaw maximum $2,500.00 per party; (5) Larry Rute $500 to $2,500 per party."

Jadlow expressed concern that Nichols would suggest a harsh custody result based solely upon Nichols' personal financial concerns. Jadlow asked the court to appoint a new case manager; however, she did not pursue her reassignment request.

### 2. November 30, 2010, Report

After Jadlow paid Nichols' retainer, Nichols continued as the case manager and recommended that the parties have shared custody of the children. Merrill did not challenge this custody recommendation, which was entered as the order of the court on December 28, 2010. However, Merrill claims that Nichols' comments in the report characterizing his conduct as litigious were unwarranted because he had agreed to the custody and parenting plan and had affirmed his intention not to litigate child custody matters.

Under K.S.A. 23-1003(d)(6), a party who disagrees with a case manager's recommendations may file a motion for review of the

recommendations by the court. The statute does not specify what kind of review the court is to make. When the court made this report its order, it merely stated: "There are no objections to the recommendations; therefore, pursuant to K.S.A. 23-1003, these recommendations shall become the orders of the court."

Even though Nichols' report stated that both parties were strong-willed and capable of litigious conduct, he devoted almost a full page in his report, in the section entitled "Litigious Conduct," to criticizing Merrill. Nichols made no comments about Jadlow's conduct. Nichols criticized Merrill because he filed "[b]riefs, objections, requests for findings of fact, interrogatories, etc. not contemplated as part of the case management process." There is nothing in the case management statutes that prohibits a party from filing pleadings, and the parties are specifically allowed to file objections to a case manager's report. Nichols' statements are especially objectionable because the parties were not experiencing disagreements regarding their children. Nichols concluded this section by stating:

"If Mr. Merrill or Ms. Jadlow [Dodik] are unable to work cooperatively with one another without excessively litigious conduct, then shared parenting may, in fact, not be the best placement opportunity for these minor children. Continued behavior of a litigious nature is not viewed favorably by the Case Manager or the Guardian Ad Litem. Both agree that this type of approach is not going to increase the likelihood of a favorable outcome in the future."

Among Nichols' recommendations was a request that his recommendations become the order of the court "immediately upon issuance." Nichols stated:

"While the parties have an opportunity to object to the Case Manager's opinions and recommendations, and may be bound to do so by their own interests, the Case Manager's recommendations should not be forestalled as a result of the litigation process. Each party here is ably represented. Both have the capacity to be litigious when they desire to do so. The prospect of the Case Manager's recommendation[s] being delayed for weeks or months while the matter is in litigation undercuts the philosophy of case management, the speedy determination of the best interests of the children and the implementation of those recommendations without delay. It would be a mistake to allow either party to prevent implementation of the Case Manager's recommendations in the future by filing

objections, requesting hearings, presenting evidence and otherwise defeating the benefits of case management."

The district court's order that all of the case manager's reports become the order of the court immediately upon filing violates a party's statutory right to object and to have the court review the objections prior to implementation. An order depriving the parties of the right to object to a case manager's recommendations deprives the parties of due process and has the effect of the court abdicating its decision-making authority to the case manager. Although a case manager is to assist the court in carrying out its responsibilities, the case manager is not authorized to perform a judicial function. We find that the district court abused its discretion and erred in ordering immediate implementation of the case manager's recommendations when they are filed.

3. *Nichols' Responses to Merrill's Change of Custody Proposal*

Merrill also contends that Nichols' responses to Merrill's February 3, 2011, letter to Jadlow demonstrated animosity and bias. Merrill's argument contains two components. First, he contends that Nichols' attempt to interject himself into an issue where there was no disagreement between the parties somehow demonstrates bias. Second, he argues that Nichols' response to his request that Nichols cease his involvement demonstrates bias.

K.S.A. 23-1001 provides, in pertinent part:

"Case management under this act is the process by which a neutral case manager appointed by the court . . . assists the parties by providing a procedure, other than mediation, which facilitates negotiation of a plan for child custody, residency or visitation or parenting time. In the event that the parties are unable to reach an agreement, the case manager shall make recommendations to the court."

When the court ordered case management, it stated:

"1. The parties shall resolve all child custody, parenting time matters not in the jurisdiction of the juvenile court, with the direction and assistance of the case manager appointed by the court. No motion may be filed without first referring the matter to the case manager for attempted resolution between the parties. . . .

. . . .

"6. The case manager shall make recommendations to the parties and the court on the following types of issues if the parties cannot reach agreement:

. . . .

"c. changes of custody and parenting time due to change of residence location of a party."

Merrill's position is that because the parties had no disagreement on custody and no motion had been filed to change custody, there was no dispute and no reason for Nichols to be involved. While the statute implies a case manager's recommendation regarding custody is only required when the parties cannot reach agreement, nothing in K.S.A. 23-1001 or the district court's case management order excludes the case manager from involvement in facilitating a custody agreement. See *In re Marriage of Gordon-Hanks*, 27 Kan. App. 2d at 992.

Even though the court's order anticipated the case manager's involvement in "all child custody [and] parenting time matters," the statute states that case management "is the process by which a *neutral case manager* appointed by the court . . . assists the parties by providing a procedure, other than mediation, which facilitates negotiation of a plan for child custody, residency or visitation or parenting time." (Emphasis added.) K.S.A. 23-1001.

Merrill believed that the case manager was only to make a recommendation when the parties did not agree on custody. Nichols apparently was relying on the district court's order that, as the case manager, he was to participate in all child custody issues. Because Merrill's proposed change of residence had the potential to affect the existing custody arrangement, a modified child custody order might be required. There is a basis for both Merrill's belief under the wording of the statute and Nichols' interpretation of the trial court's order. However, the communications between Merrill and Nichols require some scrutiny.

After Merrill wrote to Nichols expressing a belief that Nichols did not need to be involved in the custody matter, Nichols responded with an e-mail message that read: "Matt, did you really send this to me? Really?" Nichols' response to Merrill was confrontational and more likely to facilitate conflict rather than cooperation, and it tends to support a finding of bias.

### 4. *Nichols' Derogatory Comments about Merrill*

Merrill also contends that Nichols' derogatory statements about him in Nichols' motion to withdraw as case manager and during the subsequent court hearing demonstrated Nichols' animosity and bias against him. In Nichols' motion to withdraw, he characterized Merrill's actions as "unrelenting [and] aggressive," "spurious," and "litigious." At trial, Nichols admitted that he had characterized Merrill's behavior in those terms when he discussed with his wife the stress this case was causing him. Nichols claims he did not discuss the facts of this case with his wife. The record on appeal shows that Nichols' wife is the Dr. Nichols who had been a counselor for some of the parties involved in this case.

According to K.S.A. 23-1001, the case manager is required to be a neutral person. As this court noted in *In re Marriage of Gordon-Hanks*, conflict between a party and the case manager does not, by itself, establish a lack of objectivity. 27 Kan. App. 2d at 992. Nichols claimed that Merrill lacked the ability to understand his position as case manager and labeled Merrill's conduct as aggressive, litigious, and spurious. Merrill claimed that Nichols was acting in his own self-interest and was officious. Merrill and Nichols clearly exhibited antagonism toward each other. It is obvious that this antagonism damaged Nichols' objectivity. We find that this loss of objectivity supports Merrill's claim of bias.

### 5. *Offer to Refrain from Filing Report*

Merrill next claims that Nichols showed a lack of objectivity and bias when he offered to refrain from filing a report that would reflect negatively on Merrill if Merrill would pay Nichols $737.50. When Merrill objected to Nichols' request for fees in the March 10 management report, Nichols refused to delete the fee request, explaining:

"I decline your proposal here. My offer to you was to allow you to avoid presenting the issue to the court. If you do not agree that is your right. You have the right to seek to remove me, I have the right to be paid for those efforts which you chose to begin but not pursue. The offer was a courtesy to you since to explain the cost and reasons for the reccomendation [*sic*] I will need to include your letters, emails, motions etc [*sic*] along with my responses which some would con-

clude reflect negatively on you. If you change your mind about having that aired in court let me know."

Under K.S.A. 23-1001, Nichols was required to be a *neutral* case manager. Also, we recognize that Nichols had a statutory right to receive payment for his time spent on case management issues. See K.S.A. 23-1003(a)(6). However, Nichols threatened to file a negative report unless Merrill paid Nichols the costs and fees he requested. We view Nichols' offer to refrain from reporting Merrill's response to his e-mail as a threat and a demonstration of a lack of objectivity and neutrality.

The case manager should not attempt to coerce payment with a threat of filing a negative report. Because of the history of this case, the statements of the court, and the actions of the case manger, we find that this case should be sent back to a different district court judge for a determination of whether there are issues involving the children that still require a case manager's involvement. If the court determines that a case manager is needed, a different case manager should be appointed.

### 6. $7,575 Bill

Finally, Merrill contends that Nichols' billing him for $7,575 shows a bias and lack of objectivity because these fees were only incurred by Nichols in responding to Merrill's various e-mails about the fee, the motion to reassign the case manager, and Nichols' motion to withdraw as case manager. Jadlow claims she was "desirous of using the case management process, and wanted a meeting facilitated by Nichols to discuss the proposed parenting time change." Jadlow does not identify any custody dispute that she and Merrill were having. And yet, she supports having a case manager involved.

We question whether Nichols' request for payment under K.S.A. 23-1003 is appropriate. The case management procedure anticipates that the case manager's fees will be paid by the parties and may be equitably apportioned. See K.S.A. 23-1003(a)(6) (authorizing the case manager to seek judicial assistance in collecting fees); K.S.A. 23-1003(b)(2) (listing nonpayment of fees as a basis for case manager's withdrawal). K.S.A. 23-1003(d)(7) authorizes the court

to assess costs and professional fees against a party who objects to a case manager's recommendation. The court should not "rubber stamp" the request. The district court must make findings as to the reasonableness of the charges, taking into consideration whether the fees were incurred for services involving custody decisions or whether they were incurred for responding to a motion for reassignment or withdrawal of the case manager. All of these circumstances should be considered by the district court before ordering payment of the charges.

FEES ASSESSED AGAINST A PARTY
WHO FILED A MOTION TO REASSIGN THE CASE MANAGER

Merrill next contends that the district court improperly assessed Nichols' costs for time Nichols spent in preparing and filing his motion to withdraw and in defending against Merrill's motion to reassign the case manager. Merrill argues that an award of the case manager's costs and fees in responding to a motion to reassign the case manager would have a chilling effect on a party's willingness to seek removal of a case manager. Second, Merrill urges this court to conclude that the district court lacked the statutory authority to award Nichols his fees for responding to the motion to reassign the case manager. Third, Merrill notes that the case manager requested reimbursement for inappropriate activity. Finally, Merrill contends that the case manager's request for fees was filed after the hearing on the motion to reassign the case manager and Merrill was never given the opportunity to challenge the charges before they were ordered by the district court.

## 1. Chilling Effect

Without providing any authority for his assertion, Merrill argues, as a matter of law, that a case manager should not be permitted to recover the costs of defending an action to remove him or her as case manager because a party may forego a valid reason for removing a case manager for fear of incurring additional costs. While independent research has revealed no authority specifically related to K.S.A. 23-1003, the body of caselaw regarding the chilling effect

of awarding attorney fees or costs after exercising a statutory right is instructive.

In *Pinkerton v. Schwiethale*, 208 Kan. 596, 601, 493 P.2d 200 (1972), the Kansas Supreme Court upheld a statute authorizing the recovery of attorney fees only to a prevailing plaintiff in a small claims motor vehicle negligence action against an argument that the statute violated due process and equal protection. The court recognized a rational basis for a distinction between plaintiffs and defendants because the plaintiff bears the burden of selecting the appropriate forum, bringing the proper parties into that forum, and establishing the basis for relief. K.S.A. 23-1003(d)(7) also creates a disparate classification that is justified. Assessing the costs and fees associated with an unsuccessful challenge to a case manager's recommendations on a custody issue has the effect of discouraging a party from challenging the recommendations. If K.S.A. 23-1003(d)(7) is applicable, the statute has a legitimate goal of discouraging a party from seeking reassignment of a case manager without justification.

Moreover, under K.S.A. 23-1003(d)(7), a district court is not required to assess costs. Even though the statute appears to have a chilling effect on a challenge to any part of a case manager's report, Merrill has provided no evidence that the statute had any demonstrable chilling effect upon his decision to challenge Nichols' request for fees. The question then is whether the statute even applies to time the case manager spent on a motion to reassign or remove a case manager.

## 2. *Statutory Authority*

Merrill contends that the district court lacked the statutory authority to award the case manager's costs and fees incurred by responding to Merrill's motion to reassign the case manager. Jadlow responds that the statutory language in K.S.A. 23-1003(d)(7) provides that fees "may be otherwise assessed by the court." In awarding the requested fees, the district court reasoned:

"K.S.A. 23-1003(d)(7) provides that costs of the procedure and *professional time* may be assessed to the party who objected to the recommendations 'or may be otherwise assessed by the court.' Mr. Merrill's challenges to the recommendations

lack merit and are not supported by substantial evidence. It is not an insubstantial fee, but the Court finds it to be reasonable given the work Mr. Nichols did. The fees submitted by the case manager are approved. Other than the fees for the meeting about the new custody plan which involved both parties, the fees of $7,575.00 are assessed against Mr. Merrill who brought the objections." (Emphasis added.)

Because K.S.A. 23-1003(d)(7) does not explicitly authorize the court to assess a case manager's fees against the party who has filed a motion to remove the case manager, this issue requires interpretation of K.S.A. 23-1003. Statutory construction involves a question of law over which an appellate court possesses unlimited review. See *Unruh*, 289 Kan. at 1193. The fundamental rule of statutory construction is that the court must give effect to the legislative intent if such intent may be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). The courts apply a presumption that the legislature intended the result effected by the plain language of the statute, and if the statute is unambiguous, the court will not resort to legislative history or canons of construction. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009).

In pertinent part, K.S.A. 23-1003(d) provides:

"(1) If parties have been ordered by the court to attempt to settle the party's disputes with the assistance of a case manager, and are unable to settle such disputes, the parties are to follow the recommendation or recommendations of the case manager as ordered by the court.

. . . .

"(6) If a disputant party disagrees with a recommendation such party may file a motion before the court for a review at which time an order shall be made by the court. The case manager shall explain to the court either by report or testimony the reasons for such recommendation or recommendations.

"(7) Costs of the procedure and professional time may be assessed to the party who objected to the recommendations in the journal entry or may be otherwise assessed by the court."

Here, the costs and fees were incurred because Merrill filed a motion asking the court to reassign the case manager and Nichols filed a motion to withdraw. A plain reading of K.S.A. 23-1003(d)(7) suggests that the costs awarded under K.S.A. 23-1003(d)(7) pertain exclusively to challenges to the case manager's recommendations

regarding disputes between the parties, not disputes between a party and the case manager or to the propriety of the case manager's continued participation in the case. Jadlow argues for an expansive interpretation of K.S.A. 23-1003(d)(7), saying:

"There is nothing statutorily constricting the nature of the fees incurred, at least as far as Petitioner suggests. Logically, the fees and costs of the procedure would almost always consist of the case manager's time related to the objections. The caveat 'or may otherwise be assessed by the court,' also supports the notion that the award may consist of whatever fees the court deems appropriate, whether the fees relate to the objections or not."

Jadlow's argument is unpersuasive. The plain language of the statute permits the district court to assess the costs "of the procedure and professional time" against the party who challenged a case manager's recommendations. K.S.A. 23-1003(d)(7). In other words, the statute permits the court to fashion an award suitable to the circumstances of the particular case. Nevertheless, nothing in K.S.A. 23-1003(d)(7) authorizes the court to assess costs against a party for professional time wholly unrelated to the challenged custody and parenting recommendations.

Several facts disfavor Jadlow's reading of the statute. First, the provision related to assessment of costs is a subsection of K.S.A. 23-1003(d), which pertains solely to case manager recommendations and related challenges. Subsection (c) allows a party to ask for removal of a case manager. If the legislature intended the cost-assessment provision to encompass any of the case manager's time, it could have created an entirely new subsection within K.S.A. 23-1003, which would then presumably apply to all of K.S.A. 23-1003. Second, the legislature could have refrained from limiting recovery to costs associated with the objections to the case manager's recommendations. In K.S.A. 60-1610(b)(4), the legislature provided broad authority to assess costs, utilizing the following language: "Costs and attorney fees may be awarded to either party as justice and equity require." Similarly, the legislature authorized a court to assess costs of court-ordered mediation "as equity and justice require." K.S.A. 23-607. If the legislature had intended to grant the court similarly broad discretion in the case management context, it could have employed similar language.

Nevertheless, a broad reading of K.S.A. 23-1003(d)(7) does not necessarily conflict with K.S.A. 23-1003(c), which provides:

"A disputant party may request reassignment of a case manager by filing a motion with the court. The court shall consider such requests upon review. Repeated requests may raise a presumption of lack of parental cooperation and the court may consider sanctions against the uncooperative parent or parents."

The imposition of costs and attorney fees is probably the most common sanction, especially in the context of child custody and parenting time disputes under K.S.A. 23-1001 *et seq.* Unlike a discovery violation, a court could not conscientiously strike a motion to reassign a case manager as a sanction for abuse of the reassignment procedure without first considering the merits of the motion. K.S.A. 23-1003(c) implicitly requires the court to make a finding that a party made repeated requests for reassignment of the case manager before assessing fees against that party. Merrill has not made repeated requests. If K.S.A. 23-1003(d)(7) authorizes a court to assess fees and costs against a party for seeking the removal of a case manager without considering the facts supporting the motion or making a finding that he made repeated requests, the court is unlikely to rely on K.S.A. 23-1003(c), which requires the additional finding.

For all of these reasons, we hold that K.S.A. 23-1003(d)(7) does not authorize a trial court to assess the case manager's fees spent in defending against a party's motion seeking reassignment of the case manager without factual findings to support the decision. The district court abused its discretion in assessing costs against Merrill under K.S.A. 23-1003(d)(7).

Under K.S.A. 23-1003(a)(6), a case manager has the implicit authority to apportion costs between the parties to the extent that the time is related to his or her case management duties. A case manager clearly has an obligation to provide the court with recommendations pertaining to child custody, residency, or visitation or parenting time issues. See K.S.A. 23-1001; K.S.A. 23-1003(a)(3). We do not find that this duty logically extends to recommendations in favor of, or in opposition to, a motion to reassign or terminate case management.

The issue of the fee for responding to a motion to reassign the case manager does not involve an objection to a custody recommendation. The question then is whether the trial court has the authority to order those fees to be paid by one of the parties. Generally, a court may not award attorney fees absent such statutory authority. Without that authority, a trial court's equitable powers do not extend to the awarding of attorney fees. *Unruh*, 289 Kan. at 1200. Under the facts of this case, we find that the trial court erred in assessing the $7,575 fee against Merrill.

In addition, it is troubling that a case manager would abandon his role as a neutral party and adopt an adversarial role against a party's request to have the case manager reassigned, as occurred in the instant case. The case manager's role is not to debate the necessity of case management with the parties; the court ordered case management and could enforce its order against uncooperative parties by appropriate means. Instead of becoming emotionally engaged in Merrill's responses, the case manager should have submitted recommendations to the court regarding the proposed custody changes and/or reassignment of case management. For that reason, the entire $7,575 fee award is not justified under an implied authorization of the case manager to apportion the case management costs between the parties. Nichols' involvement in disputing Merrill's request to reassign a case manager went beyond the statutorily authorized role of a case manager when he became an adversary in the litigation.

Similarly, because a motion to withdraw is not advancing the statutorily defined role of case manager, a case manager's time spent preparing a motion to withdraw as case manager and time spent defending against a motion to reassign the case manager are not appropriate bases for assessing fees to either party. The district court's assessment of Nichols' $7,575 costs and fees against Merrill constituted an abuse of judicial discretion. The case is remanded to the district court for a determination of the amount of fees appropriately attributable to Nichols' role as a case manager and not the time spent in justifying his continued employment as the case manager.

### 3. *Reimbursement for Inappropriate Activity*

Merrill also challenges the trial court's assessment of Nichols' costs associated with allegedly inappropriate responses to his objection over the fees. Merrill classifies the activities for which Nichols should not receive reimbursement into four broad categories: (1) the $2,650 in fees related to Merrill's request that Nichols voluntarily withdraw as case manager and to Nichols' preparation of unnecessary reports that reflected negatively on Merrill; (2) the $2,512.50 in fees related to opposing the motion to reassign the case manager; (3) the $2,412.50 in costs related to opposing Merrill's request for a continuance and opposing the motion to reassign the case manager, including contact with the guardian ad litem; and (4) the $737.50 in fees demanded by the case manager to forestall submission of his March 16 report pertaining to Merrill's conduct.

In view of the foregoing discussion about the court's authority for assessing these costs and fees against Merrill, further discussion of the fees is not necessary. See *Rodarte v. Kansas Dept. of Transportation*, 30 Kan. App. 2d 172, 183, 39 P.3d 675, *rev. denied* 274 Kan. 1113 (2002) (holding that an issue is moot where its resolution would have no practical effect on an existing controversy). Moreover, this court is not in a position to make factual determinations concerning the purpose of Nichols' actions for which he is attempting to bill Merrill. See *Hodges*, 288 Kan. at 65. On remand, the district court should make factual determinations regarding Nichols' conduct and award costs and fees only for Nichols' time that was spent in dealing with a child custody, residency, visitation, or parenting dispute between the parties.

### 4. *Evidence of Case Manager's Time*

Finally, Merrill contends that the district court erred in adopting Nichols' request for fees when the only supporting evidence was filed on May 26, 2011, three days after the hearing on the motion to withdraw and the motion to reassign the case manager. Merrill suggests this was a due process violation because he never had the opportunity to cross-examine Nichols about the charges or otherwise challenge the evidence adopted by the court.

Again, we find that the district court lacked authority to assess Nichols' fees against Merrill. The record clearly shows that Nichols filed his report regarding fees and accompanying invoices on May 26, 2011. Although Merrill objected to Nichols' fee report, the district court did not hold a hearing to resolve the dispute. See *In re Marriage of Gordon-Hanks,* 27 Kan. App. 2d at 994-95 (reading into K.S.A. 23-1103[d][6] the right to a hearing on a disputed case management recommendation). The district court is required to hold a hearing on the issue of a case manager's fees when an objection has been filed by one of the parties. The trial court abused its discretion in adopting Nichols' fee request without a hearing.

We remand this case to a different district court judge; affirm the district court's decision on the case manager's motion to withdraw; reverse the district court's denial of Merrill's motion to assign a new case manager; charge the district court with determining whether a case manager is necessary, and if a case manager is required, appoint a different case manager; and vacate the fee award with instructions to hold an evidentiary hearing for the purpose of determining the amount, if any, of Nichols' billable time was legitimately based on his role as a case manager.