NOT DESIGNATED FOR PUBLICATION

No. 126,903

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

A.K.,
*Appellee*,

and

A.K.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JOANN WOLTMAN, judge. Submitted without oral argument. Opinion filed August 8, 2025. Affirmed in part and dismissed in part.

*A.K.*, of The Kivett Law Firm, of Kansas City, Missouri, appellant pro se Mother.

*A.K.*, appellee pro se Father.

Before ISHERWOOD, P.J., WARNER and HURST, JJ.

PER CURIAM: Not dissimilar to many divorce and child custody proceedings, A.K. (Mother) and A.K. (Father) ended up in prolonged disputes regarding the care, custody, and parenting time of their children. After about 10 years of marriage and the birth of two children, Mother and Father divorced, and this appeal arises from the parties' disputes regarding decisions concerning their youngest child.

Mother appeals the district court's decisions concerning the parties' case management and parenting plan, assessment of case management fees against her, and

unsealing the case file. Several of Mother's claims are moot and therefore dismissed as explained herein, but Mother retains a live interest in two claims: First, Mother's claim that the district court abused its discretion in assessing 100% of the case management fee related to the second formal written recommendation and, second, that the district court abused its discretion by unsealing the case records. Mother failed to demonstrate that the district court abused its discretion in either of these decisions, and the judgment is accordingly affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father married in July 2003 and had two children, R.K. and E.K. The couple divorced in December 2013. As part of its divorce decree, the district court approved a joint stipulated parenting plan in which the parties shared joint legal custody and each exercised physical parenting time. Upon request of the parties and after good cause was shown, the district court granted an order to seal the case file. In the following years, Mother remarried and the parties developed a dispute over whether Mother could move E.K. out of state.

After a two-day trial in December 2020, the district court denied Mother's request to move E.K. and ordered a new parenting plan and child support. Thereafter, at Father's request, the district court ordered limited case management to "[help] the parties by providing a procedure, other than mediation, that facilitates negotiation of a plan for child custody, residency, parenting time, and any other matters permitted by K.S.A. 23-3508 et seq." The court explained that if the parties were unable to reach an agreement, the case manager had the authority to make recommendations regarding custody, parenting time, and other matters.

Consistent with the parties' proportionate shares of combined income, the district court ordered Father to pay 71% of the case management fees and Mother to pay 29%. In

2

December 2022, the case manager issued their first formal written recommendation to the district court, and it does not appear either party contested the recommendations.

In February 2023, Mother filed a motion to terminate case management or, alternatively, reassign the case manager. Mother asserted a litany of reasons supporting her motion: (1) case management was used to prohibit E.K. from receiving medical care; (2) case management did not facilitate the negotiation of a plan for child custody, visitation, or parenting time or encourage coparenting; (3) case management created chaos for the parties and E.K.; (4) the case manager did not confirm the results of negotiated agreements by written summary; (5) the case manager lost neutrality; (6) the case manager acted outside the scope of the limited case management order; (7) the case manager stated in writing that they had more pressing matters than the case management services in this case; (8) Mother could not afford case management; and (9) the case manager did not regularly submit their billings to the parties.

The day after Mother filed her motion to terminate case management, the case manager issued their second formal written recommendation to the district court in which they made recommendations concerning: (1) confidentiality; (2) parenting time for E.K.'s 2023 spring break; (3) E.K.'s medical treatment and exchange of medical information; (4) E.K.'s passport; (5) E.K.'s school enrollment; and (6) reallocation of case management fees. The case manager recommended that Mother and Father "equally share Case Manager's fees accrued specifically for the investigation and communications associated with this Second Case Manager's Written Recommendations." In making this recommendation, the case manager emphasized Mother's failure to efficiently use the parties' online communication program, Our Family Wizard; Mother's reassertion of issues previously addressed by the case manager, such as medical communication and passport exchange; and Mother's resistance to communicate with Father without the case manager's intervention. Father requested that Mother bear all the case management

3

expenses for the issues addressed in the second written formal recommendation because Father alleged the issues had been previously decided.

The same day the case manager issued their second formal written recommendation, Mother filed a motion to modify the parties' parenting plan and child support. Less than a month later, Mother filed a motion for review of the case manager's second formal written recommendation that included objections to the recommendation and a request for an expedited hearing. Father responded to both and sought to extend case management, unseal the case, and reapportion the case management fees. In March 2023, the district court held a status conference at which it informed the parties that the case manager's recommendations should be treated as orders of the court until the court modified them.

In May 2023, the district court conducted a hearing on Mother's motion at which both Mother and Father testified. Mother's counsel requested "at least two hours" for the hearing, but the district court allotted three hours. Early in the hearing, the district court asked the case manager if they would stand on their written recommendation, and the case manager offered to answer any questions but believed the report provided a substantial basis for their recommendations. Mother testified that she "can't afford this process," ostensibly referring to case management—something Mother explicitly asserted in her motion to terminate. Mother also testified that when the district court denied her request to move E.K. out of state, it "meant my husband was unemployed for an entire year."

About 1 hour and 20 minutes into the hearing, during the majority of which Mother was testifying, Father's counsel inquired about the time limitations because she wanted to make sure she would have the same amount of time as opposing counsel. Father's counsel asserted the case manager would take "at least 15 or 20 minutes." In response, the district court informed Mother's counsel she had "about five more minutes."

4

Mother's counsel did not object to that limited time but said, "I'm on the last issue. I'm on the last recommendation anyway. I can roll through."

Father testified that he asked the case manager to get involved because Mother had failed to log into Our Family Wizard to read Father's messages for over a month and refused to respond. Father's counsel asked him, "Had [Mother] logged into Our Family Wizard, would she have been privy to some of the issues raised with [the case manager] by you?" Father responded, "Yes." Toward the end of the hearing, the district court asked the case manager some questions and then took the matter under advisement.

The district court later issued a written journal entry in which it (1) denied Mother's motion to terminate case management or reassign the case manager; (2) adopted the case manager's recommendation concerning confidentiality; (3) adjusted the case manager's recommendation concerning E.K.'s medical treatment and exchange of medical information; (4) rejected the case manager's fee recommendation and instead assessed against Mother 100% of the case manager fees and costs associated with the second written formal recommendation; (5) granted Father's motion to extend case management to E.K.'s 18th birthday; (6) granted Father's motion to reapportion case management fees equally between the parties; and (7) granted Father's motion to unseal the case file.

The district court further ordered that the parties would have 30 days before the court records were unsealed to file a motion identifying which, if any, portions of the case file should be redacted. The case manager subsequently filed a request to keep their two formal written recommendations under seal, which the district court granted. Upon receiving no further motions for redaction, the district court unsealed the rest of the case file.

Mother filed a motion for new trial, to open the judgment and allow additional testimony, or to alter or amend the judgment. And Father filed a motion to reconsider

5

unsealing the case retroactively. The district court denied both postjudgment motions. Mother also filed an objection to the case manager's fees, which the district court denied without a hearing and ordered Mother to pay the outstanding case management fees within 30 days. Mother timely appealed. While the appeal was pending—several months before the case was set on the appellate docket—E.K. turned 18 and case management terminated.

DISCUSSION

Mother asserts the following five issues on appeal: (1) the district court erred by enforcing time limits midway through the proceedings and allowing the case manager to testify unsworn without permitting questions from the parties; (2) the district court abused its discretion in denying Mother's request to terminate case management; (3) the district court erred by modifying custody and parenting time through case management over Mother's timely objection; (4) the district court erred by reapportioning case management fees; and (5) the district court abused its discretion in retroactively unsealing the files and record.

I.    MOTHER'S FIRST THREE CLAIMS DISMISSED AS MOOT

Mother's first three claims seek relief related to the district court's decisions regarding the case management process and modifications to the parenting plan. Father generally argues these claims are moot because E.K. has since turned 18 years old, which he claims automatically terminates both case management and the district court's jurisdiction regarding parenting time. "A case is moot when a court determines that it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights." *State v. Phipps*, 320 Kan. ___, Syl. ¶ 2, 570 P.3d 1240 (2025). Once a

6

court determines an issue is moot, it lacks authority to review the issue. *Phipps*, 320 Kan. ___, Syl. ¶ 3. "In other words, once a court determines that an issue is moot, jurisdiction over that issue or question ends."570 P.3d at 1245. Mother failed to address mootness.

Generally, unless otherwise agreed, a district court retains jurisdiction over child custody issues until the child reaches the age of majority—which is 18 in Kansas—or emancipation. K.S.A. 23-3218 (statute governing "modification of child custody, residency, visitation and parenting time"); K.S.A. 38-101 ("The period of minority extends in all persons to the age of eighteen [18] years . . . ."). This means the court's "jurisdiction to modify its custody and support orders is a continuing one so long as the children are minors." *Nixon v. Nixon*, 226 Kan. 218, 220, 596 P.2d 1238 (1979); see also *Leach v. Leach*, 179 Kan. 557, 559, 296 P.2d 1078 (1956) ("[I]n a divorce action the district court . . . has full jurisdiction of the *minor* children of a marriage and is directed to make provision for their custody, support and education." [Emphasis added.]). Therefore, typically when a child reaches the age of majority and no extraordinary circumstances exist, the district court no longer has jurisdiction to modify or enforce the terms of a custody order or parenting plan related to visitation, residency, and parenting time.

Case management is a statutory process "by which a neutral case manager appointed by the court . . . assists the parties by providing a procedure, other than mediation, which facilitates negotiation of a plan for *child* custody, residency or visitation or parenting time." (Emphasis added.) K.S.A. 23-3507. Case management may be ordered, as appropriate, for "any contested issue of *child* custody or parenting time." (Emphasis added.) K.S.A. 23-3508(a). Moreover, the district court only extended case management to E.K.'s 18th birthday. Typically, a child subject to court-ordered custody, parenting time, and case management plans who has reached the age of majority becomes an adult who has the right to choose their own residence and the frequency they see any of their parents. There are no circumstances here undermining that general principle.

7

Therefore, as of E.K.'s 18th birthday, case management expired and the district court lost jurisdiction to alter the custody plan or parenting time orders. Even if this court gave Mother the exact relief she has requested on these issues, its opinion would have no effect; it would exclusively serve as an ineffectual advisory opinion with no impact on any of the parties' legal rights.

Accordingly, Mother's claims on appeal challenging the district court's decisions concerning case management and the parties' parenting plan must be dismissed as moot. However, Mother retains a live interest in the remaining two claims.

II.    NO HEARING REQUIREMENT FOR ASSESSMENT OF CASE MANAGEMENT FEES

Mother claims the district court erred by reassessing her 100% of the case management fees related to the second written recommendation without first holding a separate hearing. When appointing a case manager, the court should consider all the surrounding circumstances and must consider the financial circumstances of the parties and the costs for case management. K.S.A. 23-3508(c)(2); see *In re Marriage of Merrill*, 47 Kan. App. 2d 943, Syl. ¶ 13, 281 P.3d 559 (2012). A case manager has a statutory right to receive payment for time spent on case management issues. See K.S.A. 23-3509(a)(6) ("A case manager appointed under K.S.A. 23-3508, and amendments thereto, shall . . . file for collection of costs as necessary. The court shall assist in such filing or collection efforts, or both."); *Merrill*, 47 Kan. App. 2d 943, Syl. ¶ 12. However, the court may only assign parties case management costs for professional time related to custody, residency, visitation, or parenting time issues. 47 Kan. App. 2d 943, Syl. ¶ 15.

While a case manager has the right to receive payment, the court has discretion in determining the portion of those costs each party must pay. See K.S.A. 23-3509(d)(7) ("Costs . . . may be assessed to the party who objected to the recommendations in the journal entry or may be otherwise assessed by the court."). The fee assessment is

8

discretionary, and this court therefore reviews the district court's order regarding the apportionment of case management fees for an abuse of discretion. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013) ("This court has stated that the word 'may' is usually '"employed to imply permissive, optional or discretional, and not mandatory action or conduct."' [Citations omitted.]"); see *Plains Transport of Kansas, Inc. v. Baldwin*, 217 Kan. 2, 5, 535 P.2d 865 (1975) ("The statute uses the word 'may,' leaving the matter to the sound discretion of the district court," and an appellate court therefore reviews the district court's decision for an abuse of discretion.); *Jordan v. Jordan*, 47 Kan. App. 2d 300, 305-06, 274 P.3d 657 (2012) ("The Kansas Supreme Court has stated that the word 'may' typically indicates a discretionary decision for the trial court," and an appellate court therefore reviews the district court's decision for an abuse of discretion.). A court abuses its discretion when its decision is based on an error of law or fact or when its decision is arbitrary, fanciful, or unreasonable such that no reasonable jurist would agree with the decision. *In re R.R.*, 317 Kan. 691, Syl. ¶ 3, 538 P.3d 838 (2023). As the party asserting the error, Mother bears the burden of showing such an abuse of discretion. 317 Kan. 691, Syl. ¶ 3.

Mother argues the district court made an error of law and acted arbitrarily when it assessed against her 100% of the case management fees related to the second written formal recommendation without holding a separate hearing on the issue. Mother also argues the district court's assessment was an error because (1) her objections to the case manager's recommendations were not entirely meritless; (2) issues beyond Mother's objections to the case manager's recommendations were addressed at the same hearing; (3) Mother was not given an opportunity to present evidence concerning the recommendations that had become moot by the time of the hearing, which could have altered the fee-apportionment analysis; (4) Mother has not unnecessarily utilized case management; (5) Mother followed the statutorily prescribed mechanism for challenging the case manager's recommendations; and (6) Mother could not afford to pay for case

9

management. Several of Mother's allegations taken together assign error to the district court's failure to permit her a separate hearing on the issue.

Relying on *Merrill*, Mother argues the district court made an error of law by not holding a separate hearing on the issue of the case manager's fees and their apportionment after she had objected to them. In *Merrill,* one of the parties alleged the case manager's fees were unrelated to services provided and were biased as they related to only one party. In finding the district court erred by not holding a hearing regarding the case management fees, a panel of this court noted the accuracy and purpose of the fees were in dispute. 47 Kan. App. 2d at 964. That is not the issue Mother asserts on appeal.

Not only are the facts here about the applicability of the case management fees distinguishable from those in *Merrill*, the parties also had the opportunity to address the fees during the case manager reassignment hearing. Moreover, the court gave Mother another opportunity to further object when the order stated:  "[Mother] is hereby ordered to pay the outstanding Case Management fees to [the case manager] within 30 days from the date of this Order, or personally appear before the Court in person on August 28, 2023, at 11:30 a.m." There is nothing in the case management statute requiring the court to hold a formal hearing regarding apportionment of otherwise permitted case management fees. In assessing and apportioning legally permitted case management fees, the court is merely required to consider the parties' relative financial positions and the surrounding circumstances—which the court did in this case. The district court therefore did not err by failing to hold a separate hearing regarding fee apportionment.

Mother also argues the case manager failed to regularly submit their billings but fails to show how that violates the law or makes the district court's decision unreasonable. Moreover, the case manager had already submitted their billings for the period of March 2023 to May 2023 by the time Mother had filed her objection to the case manager's fees and the district court evaluated and denied Mother's objection. Therefore, contrary to

10

Mother's alternative assertion, the case manager's fees for that period were not unknown when the district court ordered Mother to pay them.

Finding no error of law or fact, this court can only reverse the district court's judgment if it finds the decision so arbitrary or fanciful that no reasonable person would have agreed with it. In their second formal written recommendation, the case manager asserted: (1) Mother did not timely and efficiently use Our Family Wizard for communication and scheduling; (2) there was a "recurrence of issues promoted by Mother" with regard to issues previously addressed and resolved, "namely passport exchange and medical communications"; (3) Mother was resistant to the case manager's attempts to promote communication between the parties; and (4) Mother was often unavailable to timely address issues without good cause. Father's testimony at the hearing generally supported the case manager's assertions. Father testified that he asked the case manager to get involved after Mother had not logged into Our Family Wizard to read Father's messages for "like a month and a half." Father's counsel also asked him, "[a]nd was part of the reason why you asked for [the case manager]'s involvement was because you were getting no responses from [Mother]?" Father responded, "Yes."

Mother inaccurately asserts that "[t]he only evidence in this matter regarding the ability of the parties to pay for case management was presented" by her. Rather, the district court also had access to the case manager's billings and the parties' child support worksheet reporting their respective incomes. In its journal entry denying Mother's objection to the case manager's fees, the district court determined that Mother had "presented no credible evidence to support her claim that she [was] unable to pay." Thus, the district court considered the issue of Mother's ability to pay and found her testimony lacked credibility. On appeal, this court does not reassess the district court's witness-credibility determinations. See *State v. Barnes*, 293 Kan. 240, 263-64, 262 P.3d 297 (2011).

11

It is not enough that a reasonable person might have made a different decision under the circumstances. Mother simply has not satisfied the intentionally demanding standard necessary to warrant this court's reversal of a decision entrusted to the district court's sound discretion.

III.     NO ABUSE OF DISCRETION IN UNSEALING THE CASE FILE

In Mother's final argument on appeal, she contends the district court abused its discretion in unsealing the case file at Father's request. Parties may seek to seal records in a court action, and upon a showing of good cause, the court may seal such records. See K.S.A. 2024 Supp. 60-2617(a)-(c). Good cause to seal a record exists when "the court makes a finding on the record that there exists an identified safety, property or privacy interests of a litigant or a public or private harm that predominates the case and such interest or harm outweighs the strong public interest in access to the court record and proceedings." K.S.A. 2024 Supp. 60-2617(d). In making a determination whether to seal records, the court "shall recognize that the public has a paramount interest in all that occurs in a case, whether at trial or during discovery and in understanding disputes that are presented to a public forum for resolution." K.S.A. 2024 Supp. 60-2617(c). There are very few cases interpreting the appropriateness of sealing or unsealing documents under K.S.A. 60-2617, although the standards interpreting Federal Rule of Civil Procedure 26 appear to match the state statute. See Fed. R. Civ. Proc. 26; *Haire v. Peterson*, No. 12CV6965, 2012 WL 6656912 (D. Kan. 2012) (unpublished opinion).

The district court has discretion in determining whether to seal case records, and this court therefore reviews that decision for an abuse of discretion. See K.S.A. 2024 Supp. 60-2617(b) (providing the district court "*may* order the court files and records in the proceeding, or any part thereof, to be sealed or redacted or the court proceeding closed" [emphasis added]); *Roe v. Phillips County Hospital*, No. 122,810, 2022 WL 414402, at *2 (Kan. App. 2022) (unpublished opinion) (stating K.S.A. 2020 Supp. 60-

12

2617 "gives the court discretion to seal court records after a hearing and a finding of good cause"), *rev'd on other grounds* 317 Kan. 1, 522 P.3d 277 (2023). The same abuse of discretion standard applied to the previous issue applies here. See *In re R.R.*, 317 Kan. 691, Syl. ¶ 3.

The district court originally sealed the case records upon agreement of the parties and based on the following findings of good cause: (1) Mother's occupation as a practicing attorney; (2) the parties' settlement included private information about the parties and their then-minor children not otherwise available to the public; and (3) there were safety and privacy interests that outweighed the public's interest in access to the case file. At that time, the parties agreed the records should be sealed, and the court properly considered that agreement—even though the agreement cannot constitute the sole basis for sealing court records. K.S.A. 2024 Supp. 60-2617(e). After almost 10 years of the records being sealed, Father filed a motion to unseal the records. Objecting to Father's request to unseal the records, Mother testified that she still had concerns for the children's safety. Mother also argued that she expressed new privacy concerns and that, at a minimum, the unsealing should be prospective.

Father's request to unseal the records may have been a strategic maneuver as Father later attempted to rescind his request. While the process of sealing and unsealing court records is not intended to be used as a negotiation tool or bargaining chip in litigation disputes, there is little guidance regarding the process in such situations, particularly in domestic matters. Generally, the same standards and considerations are applied to the decision to unseal records as the decision to seal records. See *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) ("We review for an abuse of discretion the district court's decisions regarding whether to seal or unseal documents."); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir. 1990) (reviewing modification of an order that originally sealed the record for abuse of discretion). Because there is generally a presumption of open access to court records, the party

opposing unsealing the records has the same burden to show good cause why the records should remain sealed as a party seeking to seal records. See *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) ("'The party seeking to overcome the presumption' of public access to the documents 'bears the burden of showing some significant interest that outweighs the presumption,'" including when the relevant records are currently sealed.) (quoting *Mann v. Boatright*, 477 F.3d 1140, 1149 [10th Cir. 2007]); *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1180-82 (9th Cir. 2006) (the party opposing unsealing the records bore the burden to satisfy the standard for keeping the records sealed).

The district court found the records were properly unsealed because the facts supporting the original decision to seal the records had changed. First, the parties no longer agreed to seal the records; second, the parties' children were no longer minors; and finally, there was no longer evidence of a threat to the children related to Mother's work. Additionally, the district court gave the parties an opportunity to request redaction of certain documents prior to unsealing, and Mother failed to request any such redactions. Given the general presumption of the public's "paramount interest" in access to the case records, Mother failed to carry her burden of demonstrating the district court abused its discretion in unsealing the records. K.S.A. 2024 Supp. 60-2617(c). She cites no error of law or fact and fails to show the court's decision was unreasonable. The district court's decision to unseal the records is therefore affirmed.

CONCLUSION

Because E.K. turned 18 and case management terminated, Mother's first three claims on appeal related to the district court's decisions regarding the case management process and modifications to the parenting plan are moot and thus dismissed. In regard to Mother's two remaining claims, she has failed to demonstrate the district court abused its discretion in reassessing against her 100% of the case management fees incurred in

14

relation to the case manager's second written recommendation without a separate hearing or in unsealing the case file. The judgment of the district court is therefore affirmed.

Affirmed.