No. 77,278

In the Matter of the Marriage of
DAVID SCOTT, *Appellee*, and RENEE SCOTT, *Appellant*.
(952 P.2d 1318)

Opinion filed January 23, 1998.

*Ronald W. Nelson*, of Rose & Nelson, of Overland Park, argued the cause, and *Donna Manning*, of Manning & Smith, of Olathe, was with him on the brief for appellant.

*Joe L. Norton*, of Norton, Hubbard, Ruzicka & Kreamer, L.C., of Olathe, argued the cause, and *Allan E. Coon*, of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal by Renee Scott concerning the net amount of a child support order and the termination of an automatic wage withholding order. David and Renee Scott were divorced in 1993. They entered into a property settlement agreement which provided that the primary custody of the three children would be with Renee. David was ordered to pay child support. In 1995, Renee filed a motion to increase child support. A hearing officer granted Renee's motion and entered an order for an automatic wage withholding for payment of David's child support obligation. David filed a motion for a de novo hearing with the Johnson County District Court. The district court reduced David's child support obligation under the hearing officer's ruling and terminated the automatic wage withholding. Renee appealed the trial court's ruling to the Court of Appeals. The case was transferred to this court pursuant to K.S.A. 20-3018(c).

The original child support agreed on by the parties and approved by the court was in the amount of $475 per month. The original order also granted Renee maintenance in the amount of $425 per month for 27 months so that she could return to college and get her teaching degree. Renee informed the court that she could complete her bachelor's degree in 2 years.

In this action, Renee requested that the child support obligation be raised to $995 per month. This was based on Renee's gross monthly income of $510 as a part-time teacher's aide and David's gross monthly income of $3,600. The hearing officer ordered the child support to be raised to $995 per month.

David had always paid his support obligation directly to the court trustee, who passed this payment on to Renee. David's paycheck was not subject to wage withholding. However, the hearing officer's order contained language that required David's child support obligation to be withheld from his paycheck through wage withholding procedures. David's attorney was not aware that David had not previously been subject to wage withholding procedures, and the attorney failed to inform David of this change. Thus, David did not become aware of this language in the hearing officer's order until the first child support payment was withheld from his paycheck under the order. The wage withholding procedures caused David embarrassment at work because his employer thought the wage withholding was a garnishment.

David filed a motion for a de novo hearing from the decision of the hearing officer. According to David, the decision of the hearing officer was based upon erroneous determinations of the income of the parties and of day care expenses.

On May 28, 1996, the Johnson County District Court agreed with David and modified the decision of the hearing officer. Since Renee worked part-time, she required child care services for the youngest child, who was not in school. Due to a co-op agreement Renee had arranged with a neighbor, the child care services cost Renee $99 per month. The hearing officer calculated this expense into the overall child support obligation for which David was responsible. However, the trial court found that David's mother was suitable, available, and willing to provide child care for the three

children at all times and at no charge. In fact, David's mother was providing limited care for the youngest child 3 days a week at the time of the trial court's hearing. Thus, the trial court decided that outside child care was not necessary. Hence, the trial court removed the $99 cost for outside child care from David's overall child support obligation.

Since the divorce, Renee has gone to school part-time, on and off, to earn her teaching degree, and she has worked part-time as a teacher's aide. Renee claims she is approximately 1 year away from earning her teaching degree. Based on the salary from her part-time job, the hearing officer calculated Renee's gross income as $510 per month or $6,120 per year. The trial court found that Renee was capable of working full-time at a higher paying job and found that she could earn $18,000 per year for such employment. Thus, the trial court imputed to Renee a monthly income in the amount of $1,500 in determining the parties' child support obligations. Based on these changes in the child support calculations, the trial court modified the hearing officer's decision and reduced David's child support obligation from $995 per month, as set by the hearing officer, down to $859 per month, effective May 1, 1996. This amount is a $384 increase over the $475 child support obligation the parties agreed on and the court originally ordered David to pay.

The trial court also found, for good cause shown, that David did not have to pay his child support obligation through the wage withholding procedures. The trial court directed the trustee's office to terminate the wage withholding order that had been issued to David's employer and allow David to pay his child support obligation directly to the trustee's office. David previously had never been late with child support payments when he paid them directly to the trustee's office.

On appeal, Renee asserts that the trial court erred in deleting child care costs from David's child support obligation simply because his mother could provide day care free of cost. Renee claims that having the paternal grandmother provide day care for the children is not in the children's best interests due to the grandmother's alleged alcohol abuse and the youngest child's need for educational

day care (preschool). Renee also claims that the trial court erred in imputing income to her, so as to reduce David's child support obligation, when there was no showing she was intentionally underemployed and when the imputed income was greater than any income she had ever previously earned. Finally, Renee claims that the trial court erred in failing to order that David must be subject to wage withholding procedures as mandated by statute.

## I. DISREGARDING CHILD CARE COSTS

Since the divorce, Renee has been going to college part-time and she has worked part-time as a teacher's aide. Renee's youngest child is not yet in school, and she needs child care for him while she works. Renee has worked out a co-op arrangement with the other mothers in her neighborhood. This provides her children with continuing contact with the other neighborhood children. Plus, it substantially reduces Renee's child care expenses. Renee's work-related child care expenses amount to $99 a month on an annualized basis.

David asked the trial court to exclude these child care expenses from the child support calculation. David contended that it was unnecessary for Renee to expend money on outside child care because his mother was suitable, available, and willing to watch the children for free. .

The trial court found that the paternal grandmother was suitable to provide child care and that if any child care was needed, it could be provided by the paternal grandmother for free. Thus, the trial court refused to include the cost of outside child care within the child support calculation. In so holding, the trial court stated:

"It is my finding that the paternal grandmother should be entitled to provide day care services for the parties' minor children. I have heard nothing persuasive here to suggest that she could not fill the bill as well as any other day care facility for the minor children.

"I understand there are activities and events, and I assume the grandmother will understand those activities are important to the children in their growth and development and will allow them to participate in those activities."

Renee appeals the trial court's ruling. A trial court's order determining the amount of child support will not be disturbed on

appeal absent an abuse of discretion. See *In re Marriage of Shannon*, 20 Kan. App. 2d 460, 462-63, 889 P.2d 152 (1995) (modification of child support).

Section V.D.5. of the Kansas Child Support Guidelines sets out the criteria for determining whether child care costs are to be taken into account in determining the relative support obligation of the parents. That section provides:

> *"Actual, reasonable, and necessary child care costs incurred to permit employment or job search of a parent should be added to the support obligation.* The monthly figure is the averaged annual amount, including variations for summer, adjusted using the table below. Projected child care expenses should be reduced by the anticipated tax credit for child care or child care reimbursement before an amount is entered on the worksheet." (Emphasis added.) (1997 Kan. Ct. R. Annot. 100.)

The guidelines only require child care costs to be included in the child support calculations if the costs are (1) actual, reasonable, and *necessary*, and (2) are incurred to permit employment or job search. The trial court made an express finding that Renee's child care costs are not *necessary* because the paternal grandmother is available and suitable to provide child care at no charge. Thus, the trial court determined that Renee's outside child care costs should not be included in the child support calculations because the child care costs do not meet the guidelines criteria necessary for required inclusion in the child support computation. The question on appeal is whether the trial court abused its discretion in ruling that Renee's child care costs were *unnecessary*.

Evidence exists to support the trial court's decision. The paternal grandmother does not work out of the home and is available to care for the children while Renee is at work. The grandmother is willing to do so at no charge. Further, she lives less than 2 miles from Renee, allowing the children to remain in close proximity to their full-time residence at all times. Finally, the grandmother currently babysits for the youngest child for a limited period of time 3 days a week.

If Renee's concerns about the grandmother turn out to be valid, she may request a modification of child support and introduce evidence that work-related, outside child care is necessary and

should be included in the child support calculations. The trial court did not abuse its discretion in finding that outside child care was unnecessary because the paternal grandmother was available to provide it.

In support of her position that the trial court abused its discretion by finding that the grandmother was suitable to provide child care, Renee points out that grandparent/grandchild visitation should only be ordered if it is in the best interests of the child and there is a substantial relationship in place. See *Santaniello v. Santaniello*, 18 Kan. App. 2d 112, 115, 850 P.2d 269 (1992). This test is not applicable herein. This is not a grandparent/grandchild visitation case, and the test is not a "best interests of the child" test. This is a child support case, and the test is whether the child care costs are (1) actual, reasonable, and *necessary*, and (2) incurred to permit employment or job search. Further, despite the trial court's ruling, Renee does not have to take the children to the paternal grandmother for child care if she does not feel that this is in the children's best interests. Renee may secure any type of child care she desires. The trial court simply decided that the cost of outside child care was unnecessary and David should not have to share in its expense. The court made no ruling as to the grandmother's rights to visitation or child care privileges. The trial court's ruling to exclude child care expenses from the child support calculations was not an abuse of discretion.

## II. IMPUTING INCOME

When David and Renee were divorced, the court awarded Renee maintenance from David for 27 months. This maintenance was intended to allow Renee to go back to college and get her bachelor's degree in teaching. At the time of the divorce, Renee claimed that she could receive her degree in about 2 years.

This current motion for child support modification arose 2 ½ years after the divorce. Renee does not have her bachelor's degree. Renee has been working part-time and going to school part-time at night, on and off. David claims that he offered to watch the children at night so that Renee could regularly attend night classes. For her part-time job, Renee works as a teacher's aide. Renee

claims she is about 1 year away from earning her bachelor's degree. Both the teacher's aide job and an eventual full-time teaching position allow Renee to be off work when her children are out of school and have the summers off with her children. Renee claims that she currently only works part-time because she does not want her children to be "latch-key" kids.

Renee earns $6.79 an hour at her part-time job for an annual gross income of $6,120. This hourly amount is the most Renee has ever earned. David asked the trial court to impute a higher annual gross salary to Renee in the child support calculations. David based this position on the fact that Renee earned $6.50 an hour when she worked full-time at a bank prior to the birth of their second child. When their second child was born, Renee quit her job at the bank and worked part-time on the weekends at a direct marketing company, where she made $6 an hour. After her third child was born, Renee stayed home full-time and provided day care for the children in their home until the divorce. Since the divorce, Renee has completed some college classes and has earned her associate's degree. Based on Renee's age, experience, and education, David claims that Renee's annual gross salary should be at least $18,000 a year, which equals $8.50 an hour at a 40-hour a week job, and that this income amount should be imputed to Renee in the child support calculations. The trial court agreed and set Renee's imputed annual salary at $18,000 in the guidelines form when it calculated David's child support obligation. In so holding, the trial court stated:

"As to the issue concerning the underemployment issue of the respondent mother, quite frankly, I would say that divorce and its aftermath is a difficult event in the lives of the parties and children and does require extraordinary efforts on the part of the parents. And, therefore, I find that the mother is purposely underemployed. She, considering her education, job experience and working in a bank, could at least command $1500 a month gross income. I would base child support on that.

"There has been as far as I am concerned ample time to pursue a college degree and somewhat away from that still, and the Court will conclude that effort has not been as sustained as it probably could have been were the respondent serious about getting the degree, certainly a possibility. Fifteen hundred dollars imputation gross income is appropriate."

Renee appeals this ruling. "A trial court's order determining the amount of child support will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Denning*, 22 Kan. App. 2d 226, 914 P.2d 576 (1996); see *In re Marriage of Shannon*, 20 Kan. App. 2d at 462-63.

Section II.E.2. of the Kansas Child Support Guidelines explains when it is appropriate for a court to impute income to a custodial parent in child support calculations: "Income may be imputed to the custodial parent in appropriate circumstances, but should not result in a higher support obligation for the noncustodial parent." (1997 Kan. Ct. R. Annot. 91.) Imputing a lower income to a custodial parent would almost always result in a higher support obligation for a noncustodial parent. Thus, this section seems to imply that a custodial parent's income may only be imputed upward, not downward.

Renee claims that the trial court abused its discretion in finding that she was purposefully underemployed and that the "appropriate circumstances" existed to impute a higher salary to her.

Had Renee gone to college full-time after the divorce, which David had provided her maintenance and free child care through his mother in order for her to do, she would have completed her classes in 2 years and received her bachelor's degree in education in 1995. At the time of the divorce, Renee told David that she could complete her bachelor's degree in 2 years. David contends that he now has a right to rely on that statement. Since Renee thought she could be earning a full-time teacher's salary by 1995, David claims it is reasonable for him and the court to assume that Renee *should* be earning a full-time teacher's salary in 1997. As a full-time teacher, it is a reasonable estimate that Renee's potential earnings would be more than $18,000 a year. Thus, David asserts that the trial court did not abuse its discretion in imputing to Renee an annual salary of $18,000 in the child support calculations.

In support of this conclusion, David cites to *In re Marriage of Case*, 19 Kan. App. 2d 883, 879 P.2d 632, *rev. denied* 255 Kan. 1002 (1994). In this case, Sue Ann Miller and Carlton Case were granted a divorce in 1989, and Case was ordered to pay $800 a month in child support. At the time of the divorce, Case worked

for Southwestern Bell and earned approximately $35,000 a year. Miller earned $25,152 a year as a schoolteacher. In 1991, Case accepted a voluntary buy-out offer from Southwestern Bell and retired on December 31. However, Case believed from newspaper articles that if he did not accept the buy-out, he would lose his job or be transferred away from Topeka. Case did not want to leave Topeka because his children were there, so he accepted the buy-out. Case looked for other similar jobs in Topeka and looked for job opportunities in the classified ads. However, he did not submit any job applications after leaving Southwestern Bell. Instead, Case believed a major Topeka photography studio would be closing and he decided to open his own photography studio. Case's income declined dramatically while working for the photo studio. As of 1992, Case had a gross annual salary of $6,180 from the studio. At this time, Case filed a motion to reduce child support.

The trial court found that there had been a material change in circumstances for Case—he earned less income due to a job change—which justified a reduction in the amount of child support. In calculating the new child support obligation, Case asked the court to utilize his actual annual income from the photo studio of $6,180. However, Miller asked the court to impute a higher salary to Case in the child support calculations because Case voluntarily took a job which paid less. The court found that Case was not purposefully underemployed, but it also found that it must impute a higher salary to Case in the child support calculations in order to provide a reasonable level of support.

The trial court had no evidence of what Case could earn at other jobs outside of Southwestern Bell and it had no evidence of what his potential income in the photography business might be. The trial court made an educated guess and imputed to Case the same income which Miller earned as a schoolteacher—$25,152 annual income. The trial court based the child support calculations on Miller's income and Case's income which was imputed to be the same amount as Miller's. Miller appealed. The Court of Appeals affirmed the trial court's ruling as not being an abuse of discretion. 19 Kan. App. 2d at 891-92.

In this case, David contends that if the trial court's decision to impute a certain amount of income was upheld in *Case*, even though it was not supported by any evidence, then the trial court's decision to impute Renee's income to $18,000 must be upheld because it is clearly supported by evidence. According to David, the trial court imputed an income to Renee which was consistent with her prior earnings history, her current educational accomplishments, and the level of earnings which she should be able to reap in the near future. Based on *Case*, David claims the trial court's decision to impute income to Renee and the amount of income imputed to her is proper and within its discretion.

The trial court was aware of what a schoolteacher earns. In addition, the trial court would be painfully aware that the judicial system in Johnson County, Kansas, has a long history of difficulty in hiring and retaining entry level employees at a salary in excess of $18,000 a year. The trial judge had an opportunity to observe and hear Renee. Obviously, the better practice is to present evidence. However, this was a highly informal hearing in which both attorneys agreed that the judge should make his decision based on statements of counsel.

As the party who asserts that the trial court abused its discretion, Renee bears the burden of showing such an abuse of discretion. See *State v. Harris*, 262 Kan. 778, Syl. ¶ 5, 942 P.2d 31 (1997). Renee has not carried this burden. The trial court found that Renee had time to improve her education and that she had free child care available. Thus, the court found Renee had no reason to be working only part-time at such a low-paying job. The trial court did not abuse its discretion in finding that "appropriate circumstances" existed to impute income to Renee as a custodial parent. See *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 766-67, 815 P.2d 1125, *rev. denied* 249 Kan. 776 (1991) (noncustodial father was about to enter law school and reduce his income, but the Court of Appeals held the trial court could properly impute his prior income to him because, as parent of child of tender years, the father might have to sacrifice and delay law school until the children's mother had received her undergraduate degree or at least support the children as if he was delaying law school).

The trial court set Renee's imputed income at $18,000, or $8.50 an hour for 40 hours a week, because 6 years previously Renee had worked for $6.50 an hour before she had any college education. Under *Case*, the trial court's ruling was based on a reasonable interpretation of Renee's job history and future prospects.

## III. AUTOMATIC WAGE WITHHOLDING

When David was originally ordered to pay child support in 1993 after the divorce, he paid his support obligation himself, directly to the court trustee, which then passed this payment on to Renee. David's paycheck was not subject to wage withholding at this time. According to David, he never missed one payment during the time he made the payments himself. Renee claims he was late on one payment during this time. The hearing officer's order, which modified David's child support obligation, contained language that required David's child support obligation to be withheld from his paycheck through wage withholding procedures.

David's attorney did not know that David had not previously been subject to wage withholding procedures. David's attorney did not draw this wage withholding language in the hearing officer's order to David's attention. As such, David was not aware of this language in the hearing officer's order until the first child support obligation was withheld from his paycheck under the order. The wage withholding procedures caused David embarrassment at work because his employer thought the wage withholding was a garnishment.

David appealed the hearing officer's modification order de novo to the district court. Among other things, David asked the trial court to remove the wage withholding order from the hearing officer's ruling. Renee requested that the wage withholding order remain intact. The trial court found, for good cause shown, that David did not have to pay his child support obligation through the wage withholding procedures any longer. The trial court directed the trustee's office to terminate the wage withholding order that had been issued to David's employer and allow David to pay his child support obligation directly into the trustee's office. The trial court made it clear that a wage withholding order could be rein-

stated if David ever became delinquent with his payments and that the trial court had the power to take such action at any time it deemed it necessary.

Income withholding for purposes of enforcement of child support obligations is provided by K.S.A. 23-4,107(b), which states in pertinent part:

"Except as otherwise provided in this subsection or in subsection (j), (k) or (m), all new or modified orders for support entered on or after October 1, 1990, in title IV-D cases and *all* new or *modified orders for support entered on or after July 1, 1993, in all other* cases *shall provide for immediate issuance of an income withholding order.* Prior to July 1, 1993, whenever an order of support is entered or modified in a case other than a title IV-D case, the court shall have discretion to order immediate issuance of an income withholding order. The income withholding order shall be issued without further notice to the obligor specifying an amount sufficient to satisfy the order for support and to defray any arrearage. The income withholding order shall be issued regardless of whether a payor subject to the jurisdiction of this state can be identified at the time the order for support is entered." (Emphasis added.)

Here, the original trial court in 1993, pursuant to the agreement of the parties, had entered an order allowing David to pay the child support to the court trustee with the provision that if he failed to make payments, a withholding order would issue. As we view the trial court's current order, it simply reinstated the original order as to the wage withholding requirement that the parties had agreed on. This is authorized by K.S.A. 23-4,107(j)(1)(B). We need not reach the issue of whether the trial court found there was a "good cause" exception. The trial court did not err in removing the wage withholding order from the hearing officer's ruling.

Affirmed.