(26 P.3d 1287)

No. 85,128

In the Matter of the Marriage of GWEN S. RONEN, *Appellee*,
and JACK A. RONEN, *Appellant*.

Opinion filed July 6, 2001.

*Ronald W. Nelson* and *Joseph W. Booth*, of Rose & Nelson, of Overland Park, for appellant.

*Bruce W. Beye*, of Overland Park, for appellee.

Before GERNON, P.J., LEWIS, J., and ROGG, S.J.

ROGG, J.: This case concerns the computation of child care expenses under the Kansas Child Support Guidelines. In particular, we consider what are "special needs" and "normal expenses" under the guidelines. The question we answer is: "How are extracurric-

ular activity expenses to be considered under the guidelines?" Jack A. Ronen appeals from an adverse child support ruling in favor of Gwen S. Ronen, the primary custodial parent of their children. We reverse.

Jack and Gwen had three children during their marriage, ages 4, 6, and 9 at the time their divorce action was filed in January 1999. In November 1999, this matter came on for hearing and the court ruled, *inter alia*: (1) Jack's child support obligation was $1,151 per month in accordance with the child support worksheet submitted by Gwen, and (2) the children's extracurricular activities, including baseball, basketball, soccer, and Boy Scouts, equated to "special needs" of the children, and the parties were ordered to pay, on a pro rata basis, such sums as necessary for the children to remain in these activities.

According to the court's statements at the hearing, pro rata basis meant the parties were to pay proportionate to their income, making Jack liable for 77% and Gwen liable for 23%. This amount was in accordance with the child support worksheet. However, the final adjusted child support obligation on the worksheet reflected Jack was liable for 66% of the children's support while Gwen was liable for the remaining 34%. The child support worksheet, as approved by the court, also had no amount listed under the special needs category.

In a subsequent journal entry, the court ordered that the parties be granted joint custody of the children. Primary residential placement of the children was with Gwen, with Jack having liberal and reasonable visitation. The court revised the previous amount of child support paid by Jack to $1,135 per month.

### *Extracurricular activities are not guideline special needs*

Special needs are described under the guidelines as "items which exceed the usual and ordinary expenses incurred, such as ongoing treatment for health problems, orthodontist care, special education, or therapy costs which are not considered elsewhere in the support order or in computations on the worksheet." Administrative Order No. 128, V E.4. (2000 Kan. Ct. R. Annot. 110-11). On the child support worksheet, special needs are a line item under

the general heading of "child support adjustments." Administrative Order No. 128, Appendix I,E. (2000 Kan. Ct. R. Annot. 120-21).

A district court's order determining the amount of child support will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Scott*, 263 Kan. 638, 645, 952 P.2d 1318 (1998). This issue, however, involves interpretation of the term "special needs" as used in the guidelines. Interpretation of the guidelines is a question of law over which this court exercises unlimited review. *In re Marriage of Jones*, 23 Kan. App. 2d 858, 860, 936 P.2d 302 (1997).

There appears to be no Kansas case law directly on point with this issue. However, the Kansas Supreme Court has provided the following guidance when interpreting the guidelines. Although the guidelines are not statutes and were not developed by the legislature, the following rules of statutory construction are equally as applicable in interpreting the guidelines. See *In re Marriage of Hoffman*, 28 Kan. App. 2d 156, 12 P.3d 905 (2000), *rev. denied* 270 Kan. 898 (2001).

"The maxim *expressio unius est exclusio alterius, i.e.,* the inclusion of one thing implies the exclusion of another, may be applied to assist in determining actual legislative intent which is not otherwise manifest, although the maxim should not be employed to override or defeat a clearly contrary legislative intention. [Citation omitted.] Under this rule, when legislative intent is in question, we can presume that when the legislature expressly includes specific terms, it intends to exclude any items not expressly included in the specific list. [Citation omitted.]

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

Special needs are items above and beyond the ordinary expenses of raising children and are only those expenses not considered elsewhere in the support order or on the computation worksheet.

Items that qualify as special needs include ongoing treatment for health problems, orthodontist care, special education, and therapy costs. Administrative Order No. 128, V.E.4. Unlike normal extracurricular sports and activities, special needs are items that are not prevalent in the general population. Interpreting the category of special needs to include ordinary extracurricular activities would read intent into the guidelines that is neither readily apparent nor particularly sensible. If ordinary extracurricular activities fell under the category of special needs, it is hard to imagine an item other than a necessity such as food, clothing, or shelter, that could not be included in this category.

The district court found "activities such as baseball, basketball, soccer, and Boy Scouts are activities that are frequently engaged in by normal, healthy children all across the state of Kansas." This finding was a concession these extracurricular activities were usual and ordinary. The district court's final ruling that these activities were special needs is in contradiction to this statement.

Realizing the district court has wide discretion to determine the amount of child support, it must do so within the guidelines. Activities such as soccer, basketball, baseball, and Boy Scouts are not the type of activities contemplated under the category of "special needs." Special needs is not the proper category to account for monies spent on normal extracurricular activities of children.

Having determined the district court erred in finding the children's extracurricular activities were special needs, we need not address Jack's argument the district court did not make the appropriate findings, did not order a specific amount, and erred in making the adjustment off the worksheet. See Administrative Order No. 128, Section I of the guidelines as it pertains to Section E of the worksheet relating to listing all relevant adjustments to the child support. If the court makes adjustments here, it must make written findings included in the journal entry for its reasons for any deviation from line D.9. Pursuant to 45 C.F.R. 302.56 (2000), the findings that rebut the guidelines shall state the amount of support that would have been required; how the order varies from the guidelines, including the value of other support awarded in lieu of support presumed by the guidelines; and the justification of how

the findings serve the best interests of the child. Use of Section E shall constitute sufficient written findings to comply with this requirement. Administrative Order No. 128, I. (2000 Kan. Ct. R. Annot. 97). Here, the court did not use Section E to make the adjustments for extracurricular activities and did not order a specific amount.

### Net parental support obligation

Section II.A. of the guidelines states that the purpose of child support is to provide for the needs of the child. Needs are not limited to direct needs for food, clothing, school, and entertainment. Child support is also to be used to provide for housing, utilities, transportation, and other indirect expenses related to the day-to-day care and well-being of the children. Administrative Order No. 128, II.A. (2000 Kan. Ct. R. Annot. 97-98). Section II.C. of the guidelines details that the child support schedules are based upon national data regarding average family expenditures for children, which vary depending on the parent's combined income, the number of children in the family, and the ages of the children. The schedules assume a reduction in average expenditures per child, particularly at lower income levels because of the financial impact on the family of maintaining two households after the dissolution of the family unit. Administrative Order No. 128, II.C. (2000 Kan. Ct. R. Annot. 98).

The child support schedules used to determine the net parental support obligation were based upon national data regarding average family expenditures for children. Administrative Order No. 128, II.C. To state the obvious, most children with means, in this day and age, participate in some form of extracurricular activity. As reflected in the district court's findings, baseball, basketball, soccer, and Boy Scouts are some of the activities that are frequently engaged in by children. By definition, the cost of these activities would be included in the data regarding average family expenditures for children, much like food, school supplies, transportation, and clothing. In turn, the amounts in the child support schedules would also reflect money spent on these activities.

Money spent on extracurricular activities such as baseball, basketball, soccer, and Boy Scouts are normal expenditures already accounted for in the child support schedules. We recommend that the parties seek to agree between themselves on whether the expense of extracurricular activities will be shared in some way.

Reversed.