NOT DESIGNATED FOR PUBLICATION

No. 128,199

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

N.B.D.,
*Appellee,*

and

D.H.,
*Appellant.*


MEMORANDUM OPINION

Appeal from Douglas District Court; CARL FOLSOM III, judge. Submitted without oral argument. Opinion filed December 19, 2025. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*D.H.*, appellant pro se.

*Shaye L. Downing*, of Downing, Davey, Vokins & Mann, L.L.C., of Lawrence, for appellee.

Before ISHERWOOD, P.J., CLINE, J., and COURTNEY D. CRAVER, District Judge, assigned.

CLINE, J.: This appeal arises out of an ongoing dispute between divorced parents over child support and D.H.'s (Mother's) claims about improper conduct by the case manager appointed by the district court.

As relevant to this appeal, N.B.D. (Father) moved to modify child support in September 2022. The district court entered a case management order under K.S.A. 23-3508 and appointed attorney Bethany Roberts to serve as case manager (Case Manager).

1

Between May 17, 2023, and May 23, 2024, the Case Manager made various recommendations about the parties' minor child, but it is her recommendations on child support that are at issue on appeal. Mother also objected to the Case Manager's fees and claimed she should be removed for bias.

The district court apparently held a hearing on June 6, 2024, to address Mother's issues with the Case Manager's recommendations, fees, and removal, but the transcript is not in the record. The court filed a journal entry from this hearing on July 8, 2024, adopting the Case Manager's recommendations without explanation. It did not find the Case Manager was biased and did not address Mother's objections to the Case Manager's fees.

Mother filed a motion to modify child support on July 15, 2024, in which she repeated her objections to the Case Manager's child support recommendations. The district court dismissed Mother's motion on July 19, 2024, stating Mother's issues had not been presented to the Case Manager. On July 30, 2024, the district court issued an income withholding order that modified child support in accordance with the Case Manager's recommendations. Mother has appealed these orders.

We find the district court erred when it adopted the Case Manager's child support recommendations. Those recommendations contained several mistakes which led to a miscalculation of child support. We also find the court erred in failing to address Mother's objections to the Case Manager's fees. We therefore remand with directions to address these matters. But we do not find Mother established that the Case Manager was biased or prejudiced against her, so we affirm the district court's denial of Mother's motion to remove the Case Manager on this basis.

Mother's claims on appeal can be grouped into three categories: (1) factual mistakes in the calculation of child support, (2) claims of improper billing by the Case Manager, and (3) a claim that the Case Manager should be removed for bias.

*Standard of Review*

We review the decisions by the district court that Mother challenges for an abuse of discretion. *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 257, 452 P.3d 392 (2019) (district court's child support award is reviewed for an abuse of discretion); see also *In re Marriage of Merrill*, 47 Kan. App. 2d 943, 964, 281 P.3d 559 (2012) (reviewing district court's award of case manager fees for abuse of discretion); *In re Marriage of Gordon-Hanks*, 27 Kan. App. 2d 987, 991, 10 P.3d 42 (2000) (district court's decision on motion to remove case manager is reviewed for an abuse of discretion).

The district court abuses its discretion if its decision is based on a legal or factual error or if no reasonable person would agree with the court's decision. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). In determining whether an error occurred, we look at whether the district court's factual findings are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. *In re Marriage of Skoczek*, 51 Kan. App. 2d 606, 607-08, 351 P.3d 1287 (2015).

*Case Management in Family Law Proceedings*

Case management is a form of alternative dispute resolution, and it may be used in divorce proceedings to help parties resolve their disputes. Kansas Supreme Court Rule 906(b)(5) (2025 Kan. S. Ct. R. at 604) defines case management as

"a nonconfidential process in which a court-appointed neutral case manager assists the parties by providing a procedure, other than mediation, that facilitates negotiation of a plan for child custody, residency, or parenting time or in which the case manager makes recommendations to the court under K.S.A 23-3507."

In short, a case manager assists the district court in carrying out its responsibilities by gathering information and making recommendations to the court on child support, child custody, visitation, and parenting time, but the case manager cannot perform a judicial function. *In re Marriage of Merrill*, 47 Kan. App. 2d 943, Syl. ¶ 11; see K.S.A. 23-3509. That is, a court cannot abdicate its decision-making authority to a case manager. 47 Kan. App. 2d at 956.

If a party disputes a case manager's recommendations, the party "may file a motion before the court for a review at which time an order shall be made by the court. The case manager shall explain to the court either by report or testimony the reasons for such recommendation or recommendations." K.S.A. 23-3509(d)(6). The burden is on the party challenging the recommendation to establish the recommendation is erroneous or inappropriate. *In re Marriage of Hall*, 45 Kan. App. 2d 1, 5, 246 P.3d 404 (2010). The case manager's recommendation is advisory in nature and the district court need not accept the recommendation. *In re Marriage of Hutchison*, 47 Kan. App. 2d 851, 857, 281 P.3d 1126 (2012).

*Correction of Interstate Pay Differential Error*

Under the Kansas Child Support Guidelines § IV.E. (2025 Kan. S. Ct. R. at 116), a cost-of-living adjustment may be used when the parents reside in different states. Mother lives in Kansas and Father lives in California. In the Case Manager's May 17, 2023 recommendations and accompanying child support worksheet, she mistakenly switched the parties' home states and incorrectly credited Mother with an interstate pay differential. This improperly inflated Father's child support obligation and was made effective

November 1, 2022. Everyone agrees this was a mistake, which the district court directed the Case Manager to correct at a November 2023 hearing.

When the Case Manager recalculated child support in her May 23, 2024 recommendations, she determined Father's newly calculated monthly child support obligation to be $1,503. That is, she concluded Father should have been paying $1,503 per month in child support, effective November 1, 2022. This calculation included other mistakes discussed later. She then calculated that Father had overpaid child support by $3,594.35 based on the amount she said he should have paid—$1,503—and the amount he actually paid after November 1, 2022. The Case Manager recommended that Father's future child support obligation be reduced for a time to address this overpayment. The district court adopted these recommendations in its July 8, 2024 journal entry, but it calculated Father's overpayment to be $4,488.81 by this time.

On appeal, Mother contends the district court erred when it calculated Father's overpayment because, although the initial error was supposed to be backdated to November 1, 2022, Father's child support obligation was not modified until August 2023. She alleges that the correction for Father's overpayment should only have been backdated to August 2023, when the modified income withholding order was filed.

Mother appears to misunderstand the district court's decision. The court based its overpayment calculation on the amount it determined that Father *should have been paying*, effective November 1, 2022, rather than refunding Father only the amount he actually overpaid when he started paying the modified amount in March 2024. And Mother has not appealed the district court's decision to modify child support effective November 1, 2022. This means the court properly calculated Father's overpayment of child support by considering the amount Father paid and the amount Father should have paid from November 1, 2022, forward, instead of from August 2023 forward.

5

The district court determined Father should have been paying $1,503 in child support, effective November 1, 2022. It then credited him with the amount he paid over $1,503 each month. That is, for the months between November 1, 2022, and June 27, 2024, when he paid $1,713 (the prior child support amount), the court credited Father with his overpayment of $210. And when Father began paying $1,851 in March 2024, the court credited Father with an overpayment of $348. And when Father inexplicably paid $1,524.78 in May 2024, the court only credited him with an overpayment of $21.78.

Theoretically, the district court's method appears accurate. And when correcting the other mistakes we identify in this opinion, Mother should equally benefit. That is, when recalculating the amount of child support Father should have been paying after correcting all mistakes, that corrected obligation should be made effective November 1, 2022. The district court can then compare this new amount to the amount Father paid, to determine whether Father overpaid and, if so, by how much. On the flip side, if Father underpaid child support during this time, then Mother should receive a credit for that underpayment, calculated similarly to the way Father's overpayment was calculated.

*Health Insurance Credit*

In the parties' divorce decree, Mother was ordered to carry health insurance for the child, and this cost was factored into the parties' child support worksheet. But the Case Manager recommended that both parties carry health insurance for the child. She did not include an explanation for this change. The Case Manager listed Father's cost for monthly health insurance for the child as $498 and Mother's cost as $222 in her recommendation and used these numbers in her child support worksheet when she recalculated Father's child support, effective November 1, 2022. The district court adopted this recommendation without explanation.

Among other objections, Mother alleged the Case Manager over credited Father because she contends Father never provided proof that he paid $498 for the child's health insurance. Mother says when she asked the Case Manager to provide proof of Father's health insurance costs, the Case Manager provided a copy of Father's paystub from February 2023, which shows Father pays $10 per month for dental and vision insurance for the child and nothing for health insurance. Mother attached this paystub to her motion to modify child support, along with a 2022 coverage statement which also evidenced that Father paid around $10 in dental and vision insurance for the child and nothing for health insurance in 2022.

Mother contends that at a December 16, 2024 hearing, the district court "ruled that [Father] is not paying $498 per month and that [Mother] is Ordered to receive a credit dating back to August 2024." But Mother asserts that the district court "determined any reimbursements from November 1, 2022 to July 31, 2024 would have to be corrected on appeal" since her case has been appealed. She provides no record citation for these statements, and the transcript for this hearing is not included in the record. We therefore cannot consider these contentions.

A. *We have jurisdiction over Mother's objection to the Case Manager's assessment of a health insurance credit to Father.*

Father does not address the merits of Mother's argument about his insurance cost. As Mother notes, he never denies that his cost for health insurance was improperly inflated. Instead, he argues Mother waived her right to appeal this issue, and the district court had no legal authority to correct this error in its July 8, 2024 journal entry.

Some additional facts are required to address Father's argument. The Case Manager first recommended both parties carry health insurance and that Father receive a monthly credit of $498 for this cost on May 17, 2023. The record does not contain a

7

district court order addressing the Case Manager's May 17, 2023 recommendations. But on August 11, 2023, the Douglas County Court Trustee Office requested a nunc pro tunc order to correct another error (which is not at issue on appeal) in how the Case Manager calculated child support. A nunc pro tunc order correcting this error was filed on August 29, 2023. And an amended income withholding order, with the increased child support amount recommended by the Case Manager, was filed on August 30, 2023.

Father contends that since this nunc pro tunc order ultimately modified Father's child support obligation in accordance with the Case Manager's May 17, 2023 recommendations, it was a final order accepting those recommendations, which Mother had to appeal. Father cites no legal authority for this proposition, other than noting that under K.S.A. 60-2103, a final order of the court may be appealed within 30 days from entry of the judgment.

Mother, for her part, denies that she waived her right to object to the Case Manager's May 17, 2023 recommendations. She contends the nunc pro tunc order did not address these recommendations, so she was not required to appeal that order. Instead, she argues that since the district court never entered an order adopting the Case Manager's May 17, 2023 recommendations, there was nothing to appeal. Furthermore, in reviewing the record, we find no Certificate of Service for the nunc pro tunc order that Father claims Mother should have appealed. The Certificate of Service cited by Father is for the modified income withholding order. Father does not claim Mother was obligated to appeal the modified income withholding order nor does he cite any authority that would allow her to do so. In fact, the Income Withholding Act, K.S.A. 23-3101 et seq., provides limited procedures for addressing mistakes in an income withholding order which do not include a right to appeal the order. See K.S.A. 23-3106; see also *State ex rel. DCF v. Bidzimou*, No. 111,536, 2015 WL 2342875, at *9 (Kan. App. 2015) (unpublished opinion) (party who wishes to suspend enforcement of income withholding order must seek a stay of the order). We fail to see how Mother would be obligated to appeal an

8

order she never received, and Father cites no support for his claim that she received the nunc pro tunc order.

Mother also says the Case Manager's May 17, 2023 child support recommendations were a continuing issue since the district court ordered the Case Manager "to take up issues related to financials of the child," and "to investigate and provide recommendations on child support" in its journal entry from a November 2023 hearing. Mother submits she filed several objections to those recommendations—including some based on the health insurance credit—before the court issued its July 8, 2024 order.

Given the circumstances in this case, Mother raises valid points. To begin, Father cites no district court order addressing the Case Manager's May 17, 2023 recommendations. The July 8, 2024 journal entry only mentions the Case Manager's 2024 recommendations. And we see no reason why the district court's broad direction to the Case Manager in its journal entry from the November 13, 2023 hearing did not include the health insurance credit issue. Moreover, the district court directed the Case Manager to correct the interstate pay differential in that journal entry. We fail to see why the court would require the Case Manager to correct one error but limit her authority to correct other errors.

We also note the Case Manager mentioned crediting Father with his health insurance cost of $498 in the recommendations she filed on May 23, 2024. This supports Mother's claim that this was an ongoing issue for the district court and Case Manager's consideration at that time. And in the Case Manager's response to Mother's objections, filed May 28, 2024, the Case Manager included Father's health insurance credit in a list of issues the Case Manager identified as needing to be addressed by the district court. And Father apparently did not begin paying the modified child support amount until

March 2024, which also supports Mother's claim that this issue was not settled in August 2023.

The first time the district court issued an order addressing the Case Manager's recommendations to modify child support based on an assessment of a health insurance credit to Father was on July 8, 2024. This order contains no finding by the court that this issue had already been resolved in 2023 or that Mother had waived her objection on this issue. While jurisdiction can be raised at any time, we are not persuaded by Father's arguments or this record that the district court had no jurisdiction to address Mother's objection to the over crediting of Father's health insurance cost in its July 8, 2024 order, or that we have no jurisdiction to address it on appeal. See *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021) (subject matter jurisdiction may be raised at any time).

Another problem with Father's jurisdictional argument is that he filed no objection to the Case Manager's May 17, 2023 recommendations, nor did he appeal the trustee's August 29, 2023 nunc pro tunc order, or the August 30, 2023 income withholding order. Yet he raised the interstate pay differential error to his detriment in November 2023 where he asked the district court to correct it. Father's request would also have been after the "appeal" deadline he claims Mother missed by failing to appeal the August 2023 nunc pro tunc order.

Despite Father similarly not appealing or objecting to the Case Manager's May 17, 2023 recommendations, he claims the district court retained jurisdiction to correct the error that was to his detriment under K.S.A. 60-260(a). This statute allows a court to alter final judgments to correct clerical mistakes, oversights, and omissions whenever one is found. But what is good for the gander is good for the goose. Father provides no explanation for why the court can correct mistakes that were to his detriment but not Mother's. We fail to see why the factual error in over crediting Father for health insurance

10

costs does not constitute a "clerical mistake" or inadvertent error, which a court has jurisdiction to correct under K.S.A. 60-260(a).

B. *The district court's decision crediting Father for $498 in monthly health insurance costs is not supported by substantial competent evidence.*

We see no support in the record for the Case Manager's or the district court's decision to credit Father $498 a month against his child support obligation for health insurance costs for the child—much less substantial competent evidence that would support this factual finding by the court. As Mother points out, the Case Manager ultimately filed updated recommendations which reflect that Father's monthly health insurance cost is only $11, but this change was made effective starting September 2024. Yet the paystub and coverage statement Mother filed with her motion to modify child support evidence Father's cost was no more than $10 in 2022 and 2023. Mother claims Father's child support obligation was improperly calculated for the 20 months when that obligation included a credit of $498 per month for the health insurance premium. We agree.

Based on a review of the record, we find the district court's decision to credit Father with $498 per month for health insurance for the child, retroactive to November 1, 2022, is not supported by substantial competent evidence. The district court abused its discretion when it accepted the Case Manager's recommendation on Father's health insurance credit because this recommendation was based on a factual mistake, at least in the amount of health insurance credit Father should receive and possibly also in allowing Father a health insurance credit at all.

We also find the district court erred in dismissing Mother's July 15, 2024 motion to modify child support, based on a finding that she failed to address this issue with the Case Manager. There is ample support in the record showing Mother sought to address

this issue with the Case Manager (and the district court). The court failed to explain its reasoning, and we see no support in the record for this finding.

C. *Mother's claim of legal error is unpreserved and moot.*

In her reply brief, Mother also argues the district court made a legal error when it modified child support on July 8, 2024, without any domestic relations affidavit being filed to support the change. This appears to be a new argument on appeal. And while we see no domestic relations affidavit in the record in connection with the child support modifications, our court has held the requirement to file a domestic relations affidavit is an evidentiary requirement imposed by Supreme Court Rules, not the Legislature. *In re Marriage of Jones*, 45 Kan. App. 2d 854, 857-58, 268 P.3d 494 (2010). This requirement can be waived by the parties or the court, and the record is not clear—since Mother failed to raise this issue below—as to whether that occurred. See *Cook v. Cook*, 231 Kan. 391, 395, 646 P.2d 464 (1982). We thus find Mother's argument unpreserved on this point. We also note that this complaint is now moot since we find the district court abused its discretion in rendering this decision, based on a factual error.

*Mother's Work-Related Childcare Cost Credit*

When the Case Manager modified the parties' child support worksheet on May 17, 2023, she did not credit Mother with any work-related childcare costs. Previous worksheets had credited Mother for these costs. The Case Manager provided no explanation for this modification in her recommendations.

When the Case Manager corrected the interstate pay differential error in March 2024 and recalculated child support, she still did not include any work-related childcare costs for Mother. And, again, she did not address work-related childcare costs in her recommendations.

Mother objected to the removal of this credit when she objected to the inclusion of a health insurance cost credit for Father. And the Case Manager's response to Mother's objection is confusing, to say the least. At one point in her response, the Case Manager claimed this issue was addressed in the "Case Manager Recommendations for March 24, 2024." But no recommendations with that date are in the record, and this issue is not mentioned in the recommendations the Case Manager filed on May 23, 2024. Later in her response, the Case Manager stated the issue needed to be addressed by the court. And later still in her response, the Case Manager stated:

> "Regarding [Mother]'s request that Case Manager inappropriately removed her work related child expenses from the child support worksheet, Case Manager was ordered to fix the interstate pay differential in the *previous worksheet*, which did not list any work related child care expenses for either party. [Mother]'s work related child care expenses were not removed by Case Manager as [Mother] suggests."

The district court generally adopted the Case Manager's recommendations in its July 8, 2024 order, but it did not mention Mother's work-related childcare costs. The child support worksheet attached to the court's order does not include any credit for Mother's work-related childcare costs.

In Mother's motion to modify child support, she asked the district court to "correct the child support worksheet errors," including addressing not crediting her for work-related childcare costs of approximately $7,100. She attached several exhibits, including a child support worksheet dated August 1, 2018, which credited Mother with payment of work-related childcare costs, along with other documents which appear to be receipts for work-related childcare costs. As mentioned previously, the district court summarily dismissed Mother's motion on the basis that Mother had "not presented the child-support issue to the case manager."

13

Mother and Father make basically the same arguments about the removal of Mother's work-related childcare costs as they make about crediting Father for his health insurance costs. That is, Father does not address the merits of Mother's argument but, instead, claims she waived it by not appealing the August 29, 2023 nunc pro tunc order. And Mother cites all the times she brought up her concern in the objections she filed to the Case Manager's recommendations.

Like with Father's credit for health insurance costs, Mother points out that after her notice of appeal was filed, the Case Manager realized her error and the district court found Mother should receive this credit. But the district court only corrected this error effective September 1, 2024. The effective date of this correction is important because when the district court corrected the interstate pay differential error, the court made that correction effective November 1, 2022. And it calculated Father's overpayment of child support based on the interstate pay differential error using the amount Father paid after November 1, 2022, through July 1, 2024. In making this correction, the court also relied on a child support worksheet that improperly failed to credit Mother for her work-related childcare costs and improperly credited Father with health insurance costs.

In reviewing the record, we see no substantial competent evidence to support the district court's decision not to credit Mother for her work-related childcare costs, effective November 1, 2022, when it modified child support and calculated Father's overpayment. We therefore find the district court also abused its discretion when it accepted the Case Manager's recommendation on this issue because that recommendation was based on a factual mistake. And we find the district court erred in dismissing Mother's July 15, 2024 motion to modify child support, based on its finding that she failed to address this issue with the Case Manager, since the record shows Mother filed several objections in which she raised the issue.

14

*Credit for Uncovered Medical Expenses*

The Case Manager recommended that Father's outstanding obligation for uncovered medical expenses totaling $437.87 be credited against the amount she found that he overpaid in child support after correcting her interstate pay differential error. The district court adopted this recommendation.

Mother appears to also misunderstand this ruling. She contends the district court denied her ability to seek reimbursement for Father's share of uncovered medical expenses. But that is not what happened. The court ordered Father to pay his share of the uncovered medical expenses, but it then deducted the amount Father owed in uncovered medical expenses from the amount it calculated Father had overpaid in child support. We see no error in the court's methodology. That said, when child support is recalculated on remand, the district court is directed to ensure Father's obligation for these medical expenses is addressed. If it still determines Father has overpaid child support after November 1, 2022, it can deduct these unreimbursed medical expenses from that overpayment amount. But if the court determines Father has underpaid, then these unreimbursed medical expenses will need to be addressed along with determining how Mother should be compensated for that underpayment.

*Extracurricular Activity Fees*

In the original divorce decree, the district court ordered the parties to pay a proportionate share of the child's extracurricular expenses that matched the allocation of child support obligations. This payment was to be on top of child support. The Case Manager did not address this obligation in her May 17, 2023 recommendations.

Mother filed a motion for reimbursement for extracurricular activity fees on November 2, 2023. As mentioned, the district court postponed ruling on this motion and

directed the Case Manager "to investigate and provide recommendations on child support and extracurricular expenses including the arguments of equity brought forth by [Mother]."

In her May 23, 2024 recommendations, the Case Manager claimed the original order for Father to pay extracurricular fees in addition to child support had been modified by the district court before the Case Manager became involved. And the Case Manager recommended that Mother cover those fees going forward. She relied on *In re Marriage of Ronen*, 29 Kan. App. 2d 443, 448, 26 P.3d 1287 (2001), and *In re Marriage of Hou and Chu*, No. 118,083, 2018 WL 2170812, at *3-4 (Kan. App. 2018) (unpublished opinion), to support this recommendation, which both hold that (1) extracurricular fees are normally accounted for in calculating child support under the Kansas Child Support Guidelines, and (2) any deviation from that rule must be supported by specific written findings that the deviation is in the best interests of the child and supported by substantial competent evidence. The district court specifically adopted this recommendation in its July 8, 2024 journal entry.

Mother argues that the district court did not have authority to modify the 2017 divorce decree because Father did not appeal the decision in that decree ordering him to pay extracurricular fees. But she provides no legal authority for this point. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

While Mother is correct that a court can deviate from the Guidelines and order a party to pay such expenses in addition to child support if it finds this is in the best interests of the child, she cites no authority requiring the court to make specific findings if it chooses not to deviate. See *In re Marriage of Hou and Chu*, 2018 WL 2170812, at *3 (finding a district court can deviate from the amount of child support determined through

use of the Guidelines, but it must justify any such deviation through specific written findings in the journal entry as to how the deviation is in the child's best interests). Further, Mother's argument that the court originally made such findings in the divorce decree is unsupported by the record.

Unlike some of the other issues already discussed, both the Case Manager and the district court provided considered explanations of their positions on this issue. And we see no error in the court's decision to adopt this recommendation. These expenditures are considered when calculating the parties' general child support obligations, and Mother has cited no factual support or legal authority that establishes the court erred in making this modification. That said, we recognize that the calculation of child support is fact-specific and can change under certain circumstances. See K.S.A. 23-3005. Our ruling does not prevent the district court from considering payment of extracurricular expenses outside of Father's child support obligation, should the court find deviation from the Guidelines is justified on remand.

*Case Manager Fees*

Mother submits the district court abused its discretion by allowing the Case Manager to bill both parties for various costs, including (1) defending her employment; (2) drafting journal entries for the court; (3) attending hearings on her removal from the case; (4) time talking with Father's attorney; (5) time associated with monitoring Father's alcohol abuse through Soberlink; (6) for her errors in calculating child support; and (7) for an ex parte meeting with the court about Mother's payment of her share of the Case Manager's fees. Father addresses some of these claims—the charges for time talking to his attorney and drafting journal entries—and alleges such costs are statutorily authorized.

A case manager has a statutory right to receive payment for time spent on case management issues. See K.S.A. 23-3509(a)(6). Under Kansas Supreme Court Rule 910(c)(6) (2025 Kan. S. Ct. R. at 614) a case manager may collect fees related to the scope of the appointment. It states:

> "The order must address the allocation of fees between the parties, including any prepayment amount or an apportionment of case management costs between the parties, and address the case manager's duty to notify the court when a party fails to meet the financial obligations of the case management process under K.S.A. 23-3509. Any fee for case management should be based on the actual time expended by the case manager relating to the dispute between the parties unless the court directs otherwise. A fee for case management services must not include costs for professional time wholly unrelated to the scope of appointment."

While a case manager has the right to receive payment, the district court has discretion in determining the portion of those costs each party must pay. See K.S.A. 23-3509(d)(7) ("Costs . . . may be assessed to the party who objected to the recommendations in the journal entry or may be otherwise assessed by the court."). But the court is not to "rubber stamp" the request. Instead, it must make findings as to the reasonableness and appropriateness of the charges. *In re Marriage of Merrill*, 47 Kan. App. 2d at 959-60.

The problem we have here is the district court did not address any of Mother's objections to the Case Manager's fees in its July 8, 2024 journal entry. In fact, the court did not mention the Case Manager's fees at all.

We usually require a litigant to object to inadequate findings of fact and conclusions of law to give the district court the opportunity to correct them. And we generally presume the district court found all facts necessary to support its judgment. That said, when the record on appeal does not support such a presumption, we must remand for additional factual findings and legal conclusions. *Foster v. Stonebridge Life*

*Ins. Co.*, 50 Kan. App. 2d 1, 12, 327 P.3d 1014 (2012). Since the district court did not address Mother's objections to the Case Manager's fees, we must remand this matter for a determination on Mother's objections to the Case Manager's fees. That said, we make no ruling on whether the Case Manager can charge for the tasks Mother challenges. Such decisions are left to the sound discretion of the district court.

*Removal of the Case Manager*

Lastly, Mother challenges the district court's denial of her motion to remove the Case Manager for bias and prejudice against Mother. She claims the Case Manager's repeated errors in calculating child support and comments she made throughout the case show she was biased and had lost objectivity in the matter.

A party seeking removal of a case manager has the burden to prove removal is necessary. *In re Marriage of Merrill*, 47 Kan. App. 2d at 952. While K.S.A. 23-3509 specifies sufficient reasons for a case manager to withdraw, it contains no such guidance for removing or reassigning a case manager. Instead, it directs the district court to "consider such requests upon review." K.S.A. 23-3509(c). It does, however, also state that repeated requests to reassign a case manager "may raise a presumption of lack of parental cooperation and the court may consider sanctions against the uncooperative parent or parents." K.S.A. 23-3509(c).

Here, Mother challenged the Case Manager's neutrality. While K.S.A. 23-3509(b)(1) permits a case manager to *withdraw* if there is a "[l]oss of neutrality which prevents objectivity," the statute does not include specific reasons for removing or reassigning a case manager.

In her response to Mother's allegations, the Case Manager said she "does not believe that she has suffered a loss of neutrality which prevents objectivity in this case."

In its July 8, 2024 journal entry, the district court addressed Mother's contentions of bias or prejudice on the part of the Case Manager as follows:

> "Regarding [Mother]'s repeated assertion that Case Manager is biased or nonneutral, K.S.A. 23-3509(b)(1) permits a Case Manager to withdraw if there is a 'loss of neutrality which prevents objectivity.' The Court does not believe that [the Case Manager] has suffered a loss of neutrality which prevents objectivity in this case."

On appeal, Mother lists several reasons why she contends the district court erred and why the Case Manager should have been removed for bias:

- The Case Manager made numerous errors on the child support worksheet.
- The Case Manager knew Father was facing a second DUI, but in her recommendations she still ordered him to "enjoy" his parenting time.
- The Case Manager's email often sends an out-of-office reply and Mother tries to call the Case Manager, but Mother is told the Case Manager is not available.
- The Case Manager required Mother to transport the child to the airport for visitation with Father despite Mother having a medical ailment at the time.

As for Mother's complaints about the Case Manager's errors, we fail to see how they evidence bias or prejudice—especially since the Case Manager made errors on both parties' sides of the child support worksheet. Rather, these allegations seem to relate more to the Case Manager's competence in performing her duties. While a Case Manager could be removed for incompetence, Mother has not alleged this as a reason for removal here.

Next, Mother takes the Case Manager's direction that Father should "enjoy" his parenting time out of context. The Case Manager filed recommendations in April 2024 about the child's upcoming summer visitation with Father. In these recommendations, the Case Manager stated: "Currently Father is ordered to enjoy parenting time with the minor

child for the months of June and July." Nothing inherent in this comment shows a loss of neutrality, especially when considering other statements in those recommendations. The Case Manager also ordered that Father participate in an alcohol monitoring program during this visitation, which Father was directed to have in place at least five days before the child arrived with proof provided to both Mother and the Case Manager. And the Case Manager directed Father to "abstain from all alcohol during his parenting time with minor child," to only transport the child in a vehicle that has an ignition interlock, and to let the Case Manager know when his criminal case is resolved and in what manner. Considering these additional comments and restrictions, we do not find Mother has shown the Case Manager demonstrated bias or favoritism towards Father in making the comment Mother cites. We also find Mother's other anecdotes insufficient to show the Case Manager was biased or prejudiced against her. Mother presents isolated incidents without context or much explanation.

Case management is a fact-intensive process, and Mother has identified no factual or legal errors in the district court's denial of Mother's motion to remove the Case Manager. We also cannot say, overall, that no reasonable person would agree with the district court that these instances failed to show bias or prejudice on the part of the Case Manager.

That said, nothing in our ruling should be construed to prevent reassignment of the Case Manager on remand should the district court find it appropriate. Again, K.S.A. 23-3509 gives the district court discretion to reassign a case manager, and that discretion is not constrained to the same reasons the statute articulates for withdrawal of a case manager.

CONCLUSION

For these reasons, we vacate the district court's July 8, 2024 order, adopting the Case Manager's May 23, 2024 recommendations, and reverse its July 15, 2024 order, dismissing Mother's motion to modify child support. The district court is directed to recalculate child support, retroactive to November 1, 2022, and address Mother's objections to the Case Manager's billings. When recalculating child support and determining whether Father overpaid or underpaid child support since that date, the court should:

- determine whether both parties should be required to carry health insurance for the child;
- provide credit on the child support worksheet to any party required to carry health insurance for the child for the actual cost of any health insurance premiums paid by that party since November 1, 2022;
- credit Mother for her work-related childcare costs incurred since November 1, 2022; and
- address Father's arrearage for uncovered medical expenses, which could be credited against any overpayment or added to any arrearage.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.